894 F.2d 1469
 15 Fed.R.Serv.3d 1253
 FEDERAL SAVINGS & LOAN INSURANCE CORPORATION, as Receiver
for Sun Belt Federal Bank, F.S.B., Plaintiff-Appellant,
v.
TULLOS-PIERREMONT, A Partnership in Commendam, et al., Defendants,
Jim Gallagher & Associates, Inc., Defendant-Appellee.
 No. 88-4782.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 28, 1990.
 
 Scott C. Sinclair, Jay Adams, Shreveport, La., for plaintiff-appellant.
 Robert G. Pugh, Robert G. Pugh, Jr., Shreveport, La., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Louisiana.
 Before KING, GARWOOD, and DAVIS, Circuit Judges.
 GARWOOD, Circuit Judge:
 
 
 1
 Plaintiff-appellant Federal Savings & Loan Insurance Corporation (FSLIC), as receiver for Sun Belt Federal Bank, F.S.B. (Sun Belt), appeals the district court's judgment in favor of defendant-appellee Jim Gallagher & Associates, Inc. (Gallagher). We dismiss the appeal, agreeing with Gallagher's contention that FSLIC's notice of appeal was untimely.
 
 Proceedings Below
 
 2
 FSLIC, in its capacity as Sun Belt's receiver, instituted this suit on September 12, 1986, its complaint naming the following eight defendants, viz.: Tullos-Pierremont, a Louisiana Partnership in Commendam (Tullos-Pierremont); A.J. Tullos, Jr. (Tullos); his wife, Mae T. Tullos (Mae Tullos); Warwick P. Paul (Paul); his wife, Billie Anderson Paul (Billie Paul); Marion E. Rule (Rule); his wife, Jayne Crotts Rule (Jayne Rule); and Gallagher.
 
 
 3
 The complaint is based on a past due $100,000 promissory note allegedly executed by Tullos-Pierremont payable to Sun Belt. It is alleged that Tullos, Paul, and Rule, and apparently their respective wives, are general partners of Tullos-Pierremont and are hence liable on the note. As to Gallagher, it is alleged that Gallagher agreed with Sun Belt to buy the note from it for $100,000, but defaulted in this agreement. The complaint seeks judgment against Tullos-Pierremont, Tullos, Mae Tullos, Paul, Billie Paul, Rule, and Jayne Rule, in solido, for accrued unpaid interest on the note ($17,000 to July 9, 1986) plus, in the event Gallagher is not required to purchase the note, the $100,000 unpaid note principal and subsequently accruing interest; and it also seeks judgment against Gallagher requiring him to specifically perform his obligation to purchase the note.
 
 
 4
 The same day the complaint was filed, separate summonses were issued for each of the eight named defendants. In November 1986, Gallagher filed an answer, and Tullos-Pierremont, Tullos, and Billie Paul were each served. Summons was returned unserved on Paul. No return of summons appears as to Rule or Jayne Rule. Neither Paul, Rule, nor Jayne Rule ever answered or made any character of appearance.
 
 
 5
 On December 8, 1987, default judgment was entered in favor of FSLIC and against Tullos-Pierremont, Tullos, and Billie Paul, in solido, for $117,000 plus interest.
 
 
 6
 Subsequently, Gallagher filed a motion for summary judgment, which was granted by the district court in an April 25, 1988 five-page memorandum opinion which concluded that Gallagher had prima facie established, and FSLIC had not adequately controverted, that a condition to Gallagher's obligation to purchase the note had not been fulfilled. Also on April 25, 1988, the district court entered a separate one-page order granting Gallagher summary judgment. No motion of the kind referenced in the first sentence of Fed.R.App.P. 4(a)(4) was ever filed in respect to the April 25, 1988 summary judgment.
 
 
 7
 On September 30, 1988, FSLIC filed under Fed.R.Civ.P. 41(a) a dismissal without prejudice as to Mae Tullos, Paul, Rule, and Jayne Rule, asserting in a supporting affidavit that "in spite of due diligence, plaintiff has been unable to serve its complaint upon" those four defendants and that "[p]laintiff now seeks to dismiss its claim against these defendants so that a final judgment may be entered in this matter." The supporting affidavit prayed that the court grant the application to dismiss. In an order dated October 4, 1988, FSLIC's September 30, 1988 "motion" was granted and Mae Tullos, Paul, Rule, and Jayne Rule were "dismissed as defendants from this action." On October 24, 1988, FSLIC filed its notice of appeal "from the Order granting summary judgment in favor of defendant, Jim Gallagher and Associates, Inc., entered in this action on the 25th day of April, 1988."
 
 Discussion
 
 8
 Gallagher contends that we lack jurisdiction because the October 24, 1988 notice of appeal was filed several months too late, measured from the April 25, 1988 summary judgment. See Fed.R.App.P. 4(a)(1). Relying on our decision in Sider v. Valley Line, 857 F.2d 1043 (5th Cir.1988), Gallagher argues that the April 25, 1988 summary judgment was appealable when entered because the case was then fully adjudicated except as to unserved defendants. FSLIC concedes that its notice of appeal is late if Sider is followed, but urges that Sider, decided October 17, 1988, should not be applied retroactively, and that our earlier decision in Lohr v. United States, 264 F.2d 619 (5th Cir.), cert. denied, 361 U.S. 814, 80 S.Ct. 51, 4 L.Ed.2d 61 (1959), should be applied instead. Agreeing with Gallagher, we conclude that our decision in Nagle v. Lee, 807 F.2d 435, 438 (5th Cir.1987), handed down well prior to the judgment here sought to be appealed, established that the failure to dispose of unserved, nonappearing defendants does not prevent a judgment from being final and appealable without a certificate under Fed.R.Civ.P. 54(b), and that the contrary language in Lohr, relied on by FSLIC, is dicta and, as we pointed out in Sider, is no longer controlling as coming before the 1961 amendments to Rule 54(b).[1]
 
 
 9
 Courts of appeals have "jurisdiction of appeals from all final decisions of the district courts of the United States." 28 U.S.C. Sec. 1291. Generally, a decision is final for purposes of section 1291 only when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); see Nagle, 807 F.2d at 438; Southern Methodist University Ass'n of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 711 (5th Cir.1979). When a judgment adjudicating the rights of fewer than all the parties is rendered, it is interlocutory absent a lower court determination of finality pursuant to Fed.R.Civ.P. 54(b).[2] See, e.g., Nagle, 807 F.2d at 438; Thompson v. Betts, 754 F.2d 1243, 1245 (5th Cir.1985); 10 Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d Sec. 2654 (1983) (hereinafter Wright & Miller). No Rule 54(b) certificate was issued in the present case.
 
 
 10
 In Nagle, one unserved defendant remained undisposed of when the judgment appealed from was rendered dismissing the suit as to all the served defendants. 807 F.2d at 438. This Court, sua sponte, raised the issue of its jurisdiction in light of the fact that no disposition had been made of the claim against the unserved defendant and no Rule 54(b) certificate had been issued. Id. at 437-38. We found that "since no service was obtained on [the defendant], nor did it make an appearance in the district court, [that defendant] never became a party" to the plaintiff's suit. Id. at 438. We held that the judgment involving the served defendants was final under section 1291 and the district court was not required to dispose of the plaintiff's claim against the unserved defendant prior to appeal, nor was it required to issue a Rule 54(b) certificate. Id. Although not expressly stated in Nagle, its holding necessarily presumes that subsequent action regarding the unserved defendant, such as a dismissal, does not prevent a section 1291 final judgment as to all served defendants without a Rule 54(b) certification.
 
 
 11
 The vast majority of circuits that have reached this issue are in agreement with the principle articulated in Nagle. See Insinga v. LaBella, 817 F.2d 1469, 1470 (11th Cir.1987); Bristol v. Fibreboard Corp., 789 F.2d 846, 847 (10th Cir.1986); Leonhard v. United States, 633 F.2d 599, 608-09 (2d Cir.1980), cert. denied, 451 U.S. 908, 101 S.Ct. 1975, 68 L.Ed.2d 295 (1981); DeTore v. Jersey City Police Employees Union, 615 F.2d 980, 982 n. 2 (3d Cir.1980); United States v. Studivant, 529 F.2d 673, 674 n. 2 (3d Cir.1976); cf. Patchik v. Kensington Publishing Corp., 743 F.2d 675, 677 (9th Cir.1984) (Recognizing that judgment of dismissal is final under section 1291 where "only unserved defendants remain," but holding that principle inapplicable as to served "Curtis" defendants whose motion to quash service remained pending and unresolved by the district court and as to whom the plaintiff "has not conceded that service was improper. The action cannot be final until the service dispute is resolved by the district court in favor of the Curtis defendants or until the action is dismissed as to those defendants."); Siegmund v. General Commodities Corp., 175 F.2d 952, 953 (9th Cir.1949); Hooven, Owens & Rentschler Co. v. John Featherstone's Sons, 111 F. 81, 84-85 (8th Cir.1901); Bradshaw v. Miners' Bank of Joplin, 81 F. 902, 904 (7th Cir.1897); but see Haley v. Simmons, 529 F.2d 78, 79 (8th Cir.1976) (holding that an appeal from a judgment dismissing the suit as to all properly served defendants was premature where the district court had entered an order quashing service as to five "improperly served" defendants but had not expressly dismissed as to those five and had not issued a Rule 54(b) certificate). The fact that these decisions all involve the question of whether the appeal was premature, rather than tardy as in the instant case, is irrelevant to the critical issue of determining finality for the purpose of appellate jurisdiction.
 
 
 12
 In Sider v. Valley Line, 857 F.2d 1043 (5th Cir.1988), the plaintiff sued five defendants. Three defendants were not served. The two served defendants obtained a dismissal based on res judicata. Id. at 1045. The district court, apparently at the same time, entered an order "to statistically close the case with regard to the unserved defendants which stated '[i]f and when they are served the case will be reopened.' " Id. The plaintiff then appealed from the dismissal in favor of the served defendants. No Rule 54(b) certificate was entered. Id. In Sider, as in Nagle, we concluded that where only unserved defendants remain undisposed of at the time judgment as to all served defendants is rendered, that judgment is final under section 1291 without a Rule 54(b) determination. Sider, 857 F.2d at 1045; Nagle, 807 F.2d at 438. In each case, we held that unserved, nonappearing defendants are not parties for purposes of Rule 54(b), see Sider, 857 F.2d at 1045-46; Nagle, 807 F.2d at 438, and, thus, that Rule 54(b) is not applicable.
 
 
 13
 The Sider panel, however, after concluding that unserved defendants were not parties and that the judgment as to the served defendants was hence final, went on to state that "there is no reason to believe that there will be any further adjudication in this action," observing that the plaintiff "is known to have settled with" one of the unserved defendants and that the other two were apparently misnomers for the two served defendants. Sider, 857 F.2d at 1046.
 
 
 14
 In a later unpublished opinion of this Court, we distinguished Sider by focusing on its "further adjudication" observation, instead of focusing on the brightline guide of the unserved status of the defendants as stressed in both Nagle and Sider. Sider, 857 F.2d at 1045; Nagle, 807 F.2d at 438. In Gelabert v. Heard, 865 F.2d 1264 (5th Cir.1989) (unpublished), the plaintiff filed suit against two defendants. One defendant was served, while the other defendant was not. The district court dismissed the action as to the served defendant and, noting that service had not been made on the other defendant, also ordered that the claims against him "remain and proceed for the time being." The plaintiff appealed the dismissal as to the served defendant. There was no Rule 54(b) certification. We dismissed the appeal as interlocutory because "it [was] apparent that there will be further adjudication, either service and proceedings involving [the unserved defendant] or a dismissal for failure of service." Id. at 2-3. Thus, we distinguished Sider by relying on a "further adjudication" test and held that a Rule 54(b) certification was necessary for appeal. Id. In the present case, there eventually was further district court action, not just the potential for further action alluded to in Heard, because here, prior to appeal but more than five months after the summary judgment for Gallagher, the unserved defendants were actually dismissed.
 
 
 15
 Neither Sider nor Heard cite Nagle, which is the earlier and, therefore, authoritative precedent in this circuit. See, e.g., United States v. Edelman, 873 F.2d 791, 794 (5th Cir.1989); Ryals v. Estelle, 661 F.2d 904, 906 (5th Cir.1981). Nagle articulates a generally brightline principle--where a judgment of dismissal is rendered as to all served defendants and only unserved, nonappearing defendants remain, the judgment is final and, therefore, appealable under section 1291, without a Rule 54(b) certificate. Nagle, 807 F.2d at 438. The status of all remaining defendants as unserved and nonappearing is dispositive of the issue. They are not parties. Nagle does not suggest a "quasi-party" or likelihood of further adjudication test. Rather, Nagle flatly states that because one of the named defendants was never served and it did not appear, it "never became a party" to the suit and "[t]hus it was not necessary for the district court to have disposed of Nagle's claims against [the unserved defendant] to make the judgment dismissing the ... suit against the other defendants final and appealable." Id.
 
 
 16
 Moreover, where no disposition has been made as to an unserved defendant, in nearly every case it is almost certain that at some time some further district court action will be taken in the case respecting the claim against that defendant, viz.: either the case will be dismissed prior to service, whether voluntarily or failure to prosecute or under Fed.R.Civ.P. 4(j) for failure to serve, or service will be effected and there will then be some district court disposition. A "further adjudication" exception to the rule of Nagle, that unserved defendants are not parties and thus need not be disposed of for a judgment dismissing all other defendants to be final, would hence be an "exception" which would necessarily swallow the rule.[3] And, if the "further adjudication" exception has some substantially narrower meaning, it becomes so imprecise and incapable of reliable ascertainment at the relevant time as to create an almost crippling uncertainty in an area where certainty is of critical importance.[4]
 
 
 17
 We conclude that under Nagle, which we are bound to follow, the unserved status of a defendant (who has not answered or otherwise appeared) is controlling for purposes of finality and we will not look behind this status to review the prospects for future adjudication involving the unserved defendant.[5]
 
 
 18
 FSLIC contends that our oldest and hence most authoritative precedent is our 1959 decision in Lohr, the opinion in which indicates that failure of the district court to dispose of unserved defendants prevents the finality necessary for appeal. See Lohr, 264 F.2d at 620. In Lohr, the plaintiff brought an action against five defendants--the United States, the Civil Aeronautics Administration, Riddle Airlines, Inc., Sandy & Company, and Hector Alexander. Id. The latter two defendants were never served with process. On August 12, 1958, an order was entered dismissing the suit as to the United States, and the plaintiff gave notice of appeal therefrom to this Court on August 25, 1958. At the time of the appeal, the two unserved defendants remained in the action as well as the served defendant Riddle Airlines, the latter being granted summary judgment on November 12, 1958. Id.[6] Hence, regardless of the outcome as to the unserved defendants, the appeal was premature because a served defendant remained in the suit. In its Lohr opinion, this Court quoted from the United States' motion to dismiss the appeal as follows:
 
 
 19
 " 'Because the case involves a single claim asserted against multiple defendants, it must "be governed by the line of cases which have held that an appeal cannot be taken from the lower court's order dismissing one or several defendants while there remains a controversy as to the other defendants on the same claim". [Citing three decisions of this Court.] This rule also applies to parties defendant who have not been served. They are still parties to the lawsuit and service may still be had on some or all of them. Hardy v. Bankers Life & Casualty Co. [7 Cir.], 222 F.2d 827, 828.' " Id.
 
 
 20
 Lohr then states, "The motion to dismiss the appeal is well taken since this court is bound by the authorities cited." Id. While this language suggests that Lohr may have focused more on the failure to dispose of the unserved defendants than on the failure to dispose of the other served defendant, this aspect of the opinion is dicta because, as the opinion reflects, defendant Riddle Airlines was not disposed of until it was granted summary judgment more than two months after the plaintiff's notice of appeal from the dismissal of the United States.[7] Dicta from an opinion antecedent to Nagle does not control Nagle's holding as to unserved defendants and finality.[8] Accordingly, Nagle is authoritative.
 
 
 21
 While we are bound by Nagle, we note that neither section 1291 nor Rule 54(b) compels the conclusion that unserved defendants are not parties for purposes of Rule 54(b). Rather, the status of unserved defendants as nonparties apparently springs from the common law. See, e.g., Siegmund, 175 F.2d at 953; Featherstone's Sons, 111 F. at 84-85; Bradshaw, 81 F. at 904; In re Library Editions of Children's Books, 299 F.Supp. 1139, 1147 (Judicial Panel on Multidistrict Litigation, 1969) (construing 28 U.S.C. Sec. 1407(c)) (" 'Parties' is ordinarily used to designate only those who are named as such in the record and who are properly served with process or enter their appearance," citing 39 Am.Jur. Parties Sec. 4 (1942)); 59 Am.Jur.2d Parties Sec. 8 ("The term 'parties' is ordinarily used to designate only those who are named as such in the record and are properly served with process or enter their appearances.").[9]
 
 
 22
 We have defined a final decision for section 1291 purposes as one that disposes of the litigation on the merits and leaves the district court with nothing to do except execute the judgment. See, e.g., Nagle, 807 F.2d at 438; Southern Methodist University, 599 F.2d at 711 and cites therein. As we have noted, the fact that a judgment (though disposing of all claims against all served defendants) leaves undisposed of the claims against an unserved defendant, will normally require some further district court action in the case, either dismissing the suit as to the unserved defendant or adjudicating it after subsequent service on or appearance by that defendant. However, courts have long interpreted section 1291 in a practical rather than a technical manner. See, e.g., Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949); Southern Methodist University, 599 F.2d at 711; In re Nissan Motor Corp. Antitrust Litigation, 552 F.2d 1088, 1095 (5th Cir.1977). Thus, such housekeeping or ministerial actions may be legitimately regarded as de minimis. Cf. Gillespie v. United States Steel Corp., 379 U.S. 148, 85 S.Ct. 308, 311, 13 L.Ed.2d 199 (1964) (final decision for purposes of appealability is not necessarily the last order possible to be made in the case); F.T.C. v. Texaco, Inc., 517 F.2d 137, 143 n. 6 (D.C.Cir.1975), reh'g en banc, 555 F.2d 862, cert. denied, 431 U.S. 974, 97 S.Ct. 2939, 2940, 53 L.Ed.2d 1072 reh'g denied, 434 U.S. 883, 98 S.Ct. 250, 251, 54 L.Ed.2d 168 (1977) (same).
 
 
 23
 Prior to Rule 54(b), the courts adhered to the single judicial unit theory, which attempted to generally avoid piecemeal appeals. See Wright & Miller, Sec. 2654; 6 Moore, Taggard & Walker, Moore's Federal Practice p 54.04 (2d ed. 1985). As the complexity of litigation increased and the joinder rules were liberalized, it became apparent that the single judicial unit theory caused unnecessary and excessive delay in many cases. Rule 54(b) and its subsequent amendments attempted to "strike a balance between the undesirability of more than one appeal in a single action and the need for making review available in multiple-party or multiple-claim situations at a time that best serves the needs of the litigants." Wright & Miller, Sec. 2654. Neither the rule nor the advisory committee notes specifically address the unserved, nonappearing defendant's "party" status for purposes of the rule.
 
 
 24
 While Nagle provides an expedient, common-law-based precedent for appeal in cases where unserved defendants remain undisposed of after a judgment is rendered with regard to all served defendants, it may not provide the clearest and most efficient means for determining and expressing finality. The Federal Rules, and Rule 54(b) in particular, arguably suggest and condone a more definite and express means of dealing with unserved defendants for purposes of appealable finality than Nagle. Rule 54(b) addresses an overriding concern for certainty and for an express and unmistakable determination of finality in ambiguous multi-party and multi-claim situations. As Professor Wright states, "[Rule 54(b) ] provides much-needed certainty in determining when a final and appealable judgment has been entered.... '[I]f [the court] does choose to enter such a final order, [the court] must do so in a definite, unmistakable manner.' " Wright & Miller, Sec. 2654 (quoting David v. District of Columbia, 187 F.2d 204, 206 (D.C.Cir.1950)).
 
 
 25
 While it has been suggested that the district court, when it determines the merits as to all the served defendants, can prevent the entry of any judgment or dispositive order based on that determination if it considers that advisable in light of the fact that there are also unserved, nonappearing defendants,[10] it appears that such a process differs little from making a Rule 54(b) analysis and determining not to issue a Rule 54(b) certification. Under Nagle, a plaintiff who is actively and optimistically pursuing an unserved defendant at the time of a dismissal as to all the served defendants, may unfortunately conclude that the judgment is not final and fail to timely appeal. Similar danger may confront a served defendant in analogous circumstances. In such arguably ambiguous situations, Rule 54(b), if unserved defendants were regarded as parties for its purposes, would provide express and clear notice to the litigants, and the appellate court, that a judgment is or is not final and that the time for appeal has or has not begun to run.
 
 
 26
 It is also important to note that requiring a Rule 54(b) determination in cases where unserved defendants remain undisposed of when judgment is rendered as to all served defendants would not unduly burden the courts or the litigants. Either litigant can request a Rule 54(b) determination. As an alternative, the plaintiff could move to dismiss the unserved defendants, or the court could order such dismissal under Rule 4(j), prior to or simultaneously with the judgment as to the served defendants. The served defendants could likewise move for Rule 4(j) dismissal of the unserved defendants. And, even were such a dismissal not forthcoming, if Rule 54(b) treated unserved defendants as parties, then the served defendants would nevertheless have protection against execution until the judgment as to them was appealable.
 
 
 27
 While we conclude that the rule of Nagle--that unserved defendants are not parties for purposes of Rule 54(b) and that a judgment does not lack the finality necessary for appeal merely because claims against such defendants remain undisposed of--is clearly preferable to making a case-by-case determination of the status for such purposes of unserved defendants based on some calculation of the likelihood of further adjudication as to them, nevertheless it may well be that the best solution would be to simply treat all unserved defendants as parties for Rule 54(b) and finality purposes in all circumstances and regardless of the likelihood or not of further adjudication. However, the Nagle rule is that of nearly all other circuits which have addressed the question,[11] and we are in any event bound by Nagle.
 
 Conclusion
 
 28
 As only unserved, nonappearing defendants remained undisposed of at the time of the summary judgment in favor of Gallagher, that was the final judgment from which FSLIC had to timely appeal. Because FSLIC filed its notice of appeal well after the time provided in Fed.R.App.P. 4(a), its appeal is untimely. Accordingly, the appeal is
 
 
 29
 DISMISSED.
 
 
 
 [1]
 We further observe that in May 1987 the Eleventh Circuit, in Insinga v. LaBella, 817 F.2d 1469, 1470 & n. 3 (11th Cir.1987), in holding that undisposed of unserved defendants did not render a judgment nonappealable without a Rule 54(b) certificate, had also expressly declined to follow the contrary language in Lohr because it antedated the 1961 amendments to Rule 54(b). From the beginning, the Eleventh Circuit has considered itself bound by decisions of the former Fifth Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981). Thus Nagle and Insinga had clearly indicated, well prior to the April 25, 1988 summary judgment here, that the language in Lohr concerning unserved defendants was no longer authoritative
 
 
 [2]
 Rule 54(b) states:
 "(b) Judgment Upon Multiple Claims or Involving Multiple Parties. When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other forms of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
 
 
 [3]
 Here, for example, when the summary judgment for Gallagher was rendered, the only indication of possible "further adjudication" as to the unserved defendants was the mere fact that they had been named in the complaint and process had been issued for them over a year previously. If this creates a further adjudication exception to Nagle, then there is essentially nothing left of Nagle, for Nagle held that the dismissal as to all served defendants, which did not dispose of the unserved defendant, was appealable when entered
 
 
 [4]
 Other courts agree that the district court, which is in a much better position than this Court to make a "further adjudication" decision, can always direct (under Fed.R.Civ.P. 58) that there be no entry of judgment or other dispositive order involving the served defendants if it believes that this is appropriate because within a reasonable time service will likely be obtained and further adjudication will occur as to the unserved defendants. See, e.g., Insinga, 817 F.2d at 1470 n. 2; Leonhard, 633 F.2d at 609 n. 9; cf. Patchik, 743 F.2d at 677
 
 
 [5]
 This case does not present, and we do not speak to, a situation, such as was involved in Patchik and in Haley, where all defendants were served but the propriety of the service as to some was contested (the contest being unresolved in Patchik and sustained, but without dismissal as to the contesting defendant, in Haley )
 
 
 [6]
 On December 9, 1958, the Lohr plaintiff was allowed a voluntary nonsuit as to both unserved defendants; a motion to dismiss the appeal was filed by the United States on December 5, 1958, and was granted by this Court on March 20, 1959
 
 
 [7]
 We note that nothing in Lohr suggests the "further adjudication" test applied in Heard (and possibly suggested in Sider )
 
 
 [8]
 Further, as pointed out in Sider, 857 F.2d at 1045, and Insinga, 817 F.2d at 1470 n. 3, Lohr predated the 1961 amendments to Rule 54(b), which previously had been silent as to multiple parties
 
 
 [9]
 While Fed.R.Civ.P. 10(a) states that the caption of the complaint "shall include the names of all the parties," this does not necessarily mean that all named in the caption are parties for all purposes merely by virtue of being thus listed
 
 
 [10]
 See footnote 4, supra
 
 
 [11]
 Thus, in the interests of uniformity, any change might best be brought about by Supreme Court decision or amendment to Rule 54(b)