**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

WILLIE BROWN,

      Plaintiff-Appellant,

v.

No. 06-3207

SCOTT FISHER; J.J. WEBER;
COUNTY OF MIAMI,

      Defendant-Appellees.

**ORDER ON PETITION FOR REHEARING**
Filed January 2, 2008

Before **HENRY,** Chief Circuit Judge, **BRISCOE** and **O'BRIEN**, Circuit Judges.

This matter is before the court on the petition for panel rehearing filed by Willie

Brown on October 26, 2007. His petition contains nothing that would change the

disposition of his appeal, but it raised an issue warranting additional discussion.

Upon consideration, we grant the petition in part, withdraw the Order and

Judgment issued on October 16, 2007, and substitute the attached Order and Judgment

and concurrence. Apart from the changes reflected in the substituted Order and

Judgment, the petition for rehearing is denied.

Entered for the Court

*Elisabeth A. Shumaker*

Elisabeth A. Shumaker, Clerk

FILED
United States Court of Appeals
Tenth Circuit

**January 2, 2008**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

WILLIE BROWN,

              Plaintiff - Appellant,

      v.

SCOTT FISHER; J.J. WEBER; COUNTY
OF MIAMI,

              Defendants - Appellees.

No. 06-3207

D. Kan.

(D.C. No. 05-CV-2268-KHV)

---

**ORDER AND JUDGMENT**[*]

---

Before **HENRY**, **BRISCOE**, and **O'BRIEN**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination of this

appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered

submitted without oral argument.

Willie Brown was stopped by a police officer for a minor traffic violation. He

refused to present his driver's license and, as a result, was arrested and spent a night in

jail. At some point, his vehicle was searched by another officer and an open beer can was

discovered in the cab of his pick-up truck. Brown brought this case against the two

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

officers, Scott Fisher and J.J. Weber, and the County of Miami, Kansas, claiming a violation of his rights under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. The district court allowed Weber to answer out of time, and then granted summary judgment in favor of Fisher and Weber. The district court dismissed Brown's claims against the County without prejudice for failure of service. Appearing *pro se*,[1] Brown appeals from these decisions. We dismiss in part, reverse in part, and affirm in part.

## I. BACKGROUND

At 9:30 p.m. on February 25, 2004, Miami County Deputy Sheriff Scott Fisher stopped Brown's truck because the passenger-side headlight was not illuminated.[2] Fisher approached Brown and asked to see his driver's license. In response, Brown asked Fisher whether he had probable cause for the stop. Fisher responded that one of Brown's headlights was out and again asked to see Brown's driver's license. Brown asked if he was under arrest. Fisher replied he was not under arrest, but would be if he did not produce a driver's license. Fisher walked back to his patrol car and Brown got out of his truck to look for his license. Fisher ordered Brown back in the truck and called for back-up. When Fisher returned to Brown's truck, Brown was sitting in the driver's seat, looking in his briefcase for his license.

Fisher arrested Brown, frisked him, handcuffed him, and placed him in the patrol

---

[1] We liberally construe Brown's pleadings, on account of his *pro se* status, but we hold Brown to the same rules of procedure as other litigants. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

[2] Though not relevant to the issues raised on appeal, there was a fourteen-year-old passenger riding with Brown at the time of the stop.

2

car. Fisher then went to Brown's truck and found Brown's billfold in the briefcase. He searched the billfold in Brown's presence and discovered Brown's valid Kansas driver's license. At this point, Deputy Sheriff J. J. Weber arrived on-scene. Fisher removed Brown from the patrol car and Weber questioned Brown about his driver's license. Thereafter, Fisher transported Brown to the police station, which took between fifteen and twenty minutes. While Brown was in transport, Weber searched Brown's truck and found an open, non-alcoholic beer can in the passenger area.

At the station, Brown was issued a citation for driving with an open alcoholic beverage container and for failing to display a driver's license upon demand. Brown refused to post a $35.00 bond and spent the night in the Miami County Jail. Brown was released the next morning.[3]

On June 27, 2005, Brown filed a complaint against Fisher, Weber and Miami

---

[3] If Brown was convicted this action would be barred. *Heck v. Humphrey*, 512 U.S. 477 (1994). The record is equivocal on that score. Brown alleges, in paragraph 7 of his complaint, he "appeared as directed on the ticket on March 25th, 2004, at 9 A.M. in the Miami County courthouse before Judge Richard M. Smith, talked to the judge, and left. No charges were filed or prosecuted." Fisher and Weber deny the allegations contained in this paragraph, claiming they lack sufficient information to form a belief as to their truth or falsity. (R. Vol. 1, Doc. 5 at 2; Doc. 11 at 2.) In his motion for summary judgment, Officer Fisher claims, as an uncontested material fact: "Brown was booked into the jail at about 10:30 p.m. He was released the next morning at about 7:30 a.m. by Undersheriff Mark Schmidt. He had been given a citation while in his jail cell which was delivered by one of the jailers." (R. Vol. 1, Doc. 22 at 7.) Fisher does not include any facts relating to the ultimate outcome of the citation. Brown testified at his deposition that he was delivered a citation in his jail cell. (R. Vol. 1, Doc. 22, attach. at 44.) He also testified he showed up in court and his case was not called. (*Id.* at 47.) He claimed he did not ask why his case was not called, and did not know whether the case was still pending. (*Id.* at 50.) Reading the record most charitably to Brown, we assume he was not convicted.

3

County under 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. Fisher answered Brown's complaint on July 18, 2005. On July 28, 2005, Weber filed a motion to answer out of time, claiming excusable neglect on account of defective service. The district court granted this motion on August 10, 2005, without opinion. Both Fisher and Weber then filed motions for summary judgment on all claims, and the district court granted these motions on February 27, 2006. The court determined the allegations in Brown's complaint implicated only the Fourth Amendment, and Fisher and Weber were entitled to judgment as a matter of law because neither the arrest nor the search violated Brown's Fourth Amendment rights. The court ordered Brown to appear and show cause as to why his claims against the County should not be dismissed, based on his failure to allege "the County violated his rights through a County custom, practice or policy or by the act of a final decision maker." Brown argued the merits of his case against the County, but the court did not consider the merits. Instead it dismissed Brown's claims against the County without prejudice for failure of service.

On appeal, Brown argues the district court erred by: (1) allowing Weber to answer out of time; (2) granting summary judgment to Fisher and Weber; and (3) dismissing Brown's claims against the County. We first consider Brown's claims against the County, and then his claims against Fisher and Weber.

4

## II. DISCUSSION

A. *The County of Miami*

Brown filed his complaint on June 27, 2005. On July 1, 2005, Brown's process server served a copy of the summons and complaint upon an employee of the Clerk of the District Court of Miami County, Kansas. On July 6, 2005, Brown filed a proof of service upon Miami County, based upon serving the Clerk of the District Court. Brown never served the Miami County Clerk or any member of the governing body of Miami County.[4]

The district court dismissed Brown's claims against the County without prejudice because Brown failed to properly serve the summons and complaint upon the County within 120 days of filing as required by Rule 4(m) of the Federal Rules of Civil Procedure ("If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time . . . ."). While the court did not directly consider the merits of Brown's claims against the County, it did remark in a footnote that Brown had not alleged any policy or action by the County which violated his constitutional rights. On May 9, 2006, the district court entered a separate judgment, dismissing without prejudice Brown's claims against the County.

---

[4] Pursuant to Rule 4(j)(2) of the Federal Rules of Civil Procedure, service upon a state, municipal corporation or other governmental organization is effected by delivering a copy of the summons and complaint to its chief executive officer or by serving the summons and complaint "in the manner prescribed by the law of that state." Kansas law provides service upon a county is effected by serving one of the county commissioners, the county clerk, or the county treasurer. Kan. Stat. Ann. § 60-304(d)(1).

1.    Jurisdiction

Before we consider the district court's dismissal of Brown's claims against the County, we must ensure we have jurisdiction. Though neither party has raised a jurisdictional challenge, "we have an independent duty to examine our own jurisdiction." *Amazon, Inc. v. Dirt Camp, Inc.*, 273 F.3d 1271, 1274 (10th Cir. 2001). Under 28 U.S.C. § 1291, only "final decisions" are appealable. *See* 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ."). The question, then, is whether a dismissal without prejudice for failure of service of process constitutes a final, appealable decision.

In *Amazon*, we explained "[a]lthough a dismissal without prejudice is usually not a final decision, where the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court, the dismissal is final and appealable." 273 F.3d at 1275. There, we held the district court's decision to decline supplemental jurisdiction and dismiss state claims without prejudice for refiling in state court effectively disposed of the entire action in federal court and was thus ripe for review. *See id.* In *Moya v. Schollenbarger*, we noted "a dismissal [] without prejudice does not necessarily make it non-final under section 1291." 465 F.3d 444, 448 (10th Cir. 2006). We set forth three principles for determining whether an order of a district court is final and appealable. *Id.* at 450. The third principle is relevant here: "when the dismissal order expressly *grants* the plaintiff leave to amend, that conclusively shows that the district court intended only to dismiss the complaint [not the entire action]; the dismissal is thus not a final decision." *Id.* at 451.

6

Here, it appears the district court did not intend to dismiss Brown's entire cause of action and finally dispose of his case. The court's order allowed Brown to re-file and properly serve his complaint upon the County. The court even indicated in a footnote what Brown might need to do to survive a motion to dismiss as to his claims against the County. Presumptively then, the order of dismissal was not final and appealable.[5] Though, as stated in *Moya*, a dismissal without prejudice is not necessarily non-final, it is here, where it invites a plaintiff to correct the procedural defect and re-file. We therefore dismiss this portion of Brown's appeal for lack of jurisdiction.[6]

B. *Fisher and Weber*

---

[5] This is not inconsistent with prior cases in which we reviewed orders of dismissal *with prejudice* for failure to comply with the Federal Rules of Procedure. *See, e.g., Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1161 (10th Cir. 2007) (reviewing dismissal with prejudice under Fed. R. Civ. P. 41(b) for failure to comply with the pleading requirements contained in Fed. R. Civ. P. 8)*; Olsen v. Mapes*, 333 F.3d 1199, 1200 (10th Cir. 2003) (reviewing dismissal with prejudice under Fed. R. Civ. P. 41(b) for failure to effectuate service under Fed. R. Civ. P. 4(i)).

[6] Brown's claims against the County are subject to a two-year statute of limitations. *See Wallace v. Kato*, 127 S.Ct. 1091, 1094, *reh'g denied*, 127 S.Ct. 2090 (2007) (statute of limitations applicable to § 1983 actions is what state law provides for personal injury torts); Kan. Stat. Ann. § 60-513(a)(4) (two-year statute of limitations for personal injury torts). The dismissal of Brown's claims against the County more than two years after his cause of action accrued does not convert the dismissal without prejudice into a *de facto* dismissal with prejudice because Brown could have taken advantage of Kansas' tolling rules and refiled his complaint. *See Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 962 (10th Cir. 1991) ("Limitations periods in § 1983 suits are to be determined by reference to the appropriate state statute of limitations and the coordinate tolling rules.") (internal quotations and citation omitted); Kan. Stat. Ann. § 60-203(b) (90-day grace period for refiling after service has been adjudicated defective, with 30-day extension permitted for good cause); Kan. Stat. Ann. § 60-518 ("If any action be commenced within due time, and the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff . . . may commence a new action within six (6) months after such failure.").

7

On July 28, 2005, Weber filed a motion to answer out of time, claiming excusable neglect on account of defective service. The district court granted Weber's motion without opinion, allowing Weber to file and serve his answer within five days of the date of the order. The court later granted Fisher and Weber's motions for summary judgment, holding the defendants were entitled to judgment as a matter of law on Brown's claim for violation of his rights under the Fourth Amendment (according to the court, the only viable claim) because Fisher had probable cause to arrest Brown and it was therefore reasonable for Fisher and Weber to search the passenger compartment of Brown's vehicle.

1.      Jurisdiction

We continue to examine our jurisdiction. *See Amazon*, 273 F.3d at 1274. Generally, "a party cannot obtain appellate jurisdiction where the district court has dismissed at least one claim without prejudice because the case has not been fully disposed of in the lower court." *Jackson v. Volvo Trucks N. Am., Inc.*, 462 F.3d 1234, 1238 (10th Cir. 2006); *see also Catlin v. United States*, 324 U.S. 229, 233 (1945), *superseded by statute*, 9 U.S.C. § 15 (generally, a decision is final under 28 U.S.C. § 1291 only when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment."). There is an exception to this general rule where the unadjudicated claims relate only to a defendant who was never served. Under this exception, an order finally disposing of the interests of all defendants who have been served is appealable because the unserved defendant was never made a proper party to the action. *See Bristol v. Fibreboard Corp.*, 789 F.2d 846, 847 (10th Cir. 1986). We find this exception to be applicable here.

8

In *Bristol*, we held the fact that two (of twenty-one) defendants were not considered in the district court's order and judgment "does not prevent the decision of the district court from being final." *Id.* We explained"[t]hese unserved defendants were never made parties to this lawsuit. It was not necessary for the district court to enter an order dismissing them prior to its entry of the order and judgment." *Id.* (citations omitted). *Bristol* was cited by the Eleventh Circuit in *Insinga v. LaBella*, where it held when "final judgment has been entered as to all defendants who have been served with process and only unserved defendants remain, the district court's order may be considered final under 28 U.S.C. § 1291 for purposes of perfecting an appeal." 817 F.2d 1469, 1469-70 (11th Cir. 1987) (citing cases from the Tenth, Ninth, Second and Third Circuits).

In *Federal Savings & Loan Insurance Corporation v. Tullos-Pierremont,* the Fifth Circuit expanded upon this analysis. 894 F.2d 1469 (5th Cir. 1990). The issue before the court was whether an appeal was timely where the plaintiff did not appeal immediately after the district court granted summary judgment to one of eight defendants, but rather, appealed only after seeking the dismissal without prejudice as to four defendants who had never been served (the other three defendants had been dismissed for lack of personal jurisdiction early on in the case). *Id.* at 1470-71. The court adopted a brightline rule: "where a judgment of dismissal is rendered as to all served defendants and only unserved, nonappearing defendants remain, the judgment is final, and therefore, appealable under section 1291, without a Rule 54(b) certificate." *Id.* at 1473. The court rejected a "further adjudication test" which would have meant a judgment of dismissal is only rendered final as to all served defendants if further adjudication as to the unserved defendants is unlikely.

9

*Id.* The court reasoned the brightline rule provided a clearer rule for litigants, and cautioned the further adjudication test would "swallow the rule" because "in nearly every case [where no disposition has been made as to an unserved defendant] it is almost certain that at *some* time *some* further district court action will be taken in the case respecting the claim against that [unserved] defendant." *Id.*[7]

While we decline to adopt the brightline rule, we hold the mere fact that there may be subsequent adjudication between Brown and the County does not prevent the judgments as to Fisher and Weber from being final. It would be a different case if Brown had voluntarily sought the dismissal of his claims against the County. We have previously held a plaintiff cannot voluntarily dismiss some of its claims without prejudice in order to make a non-voluntary dismissal with prejudice ripe for review. *See Cook v. Rocky Mountain Bank Note Co.*, 974 F.2d 147, 148 (10th Cir. 1992); *Heimann v. Snead*, 133 F.3d 767, 769 (10th Cir. 1998). It would also be a different case if the alleged defect in service as to the County had not yet been adjudicated. *See Tullos-Pierremont*, 894 F.2d at 1474, n.5 (noting the case did not present, and the court did not speak to, a situation where all defendants were served, but the propriety of the service as to some was contested and either unresolved or sustained but without dismissal as to the contesting defendant). Because neither of these circumstances is presented here, we have jurisdiction to review the district court's orders allowing Weber to file his answer out of time and granting

---

[7] This case has been cited with approval, though not in this Circuit. *See, e.g., Garwood Packaging, Inc. v. Allen & Co.*, 378 F.3d 698, 700 (7th Cir. 2004).

summary judgment in favor of Weber and Fisher.

2.    Extension of Time to File an Answer

Brown contends the district court erred in permitting Weber to file his answer out of time, and should have instead granted default judgment against Weber based on his failure to answer. Under Rule 6(b) of the Federal Rules of Civil Procedure, the district court may permit the late filing of an answer if it finds the late filing resulted from "excusable neglect." We review a district court's decision extending time to file for abuse of discretion. *Panis v. Mission Hills Bank*, N.A., 60 F.3d 1486, 1494 (10th Cir. 1995). Weber argued to the district court that he should be granted an extension of time because Brown improperly served an administrative assistant at a Kansas Highway Patrol office who was not authorized to receive service of process on his behalf. According to Weber, the delay resulting from the improper service constituted "excusable neglect." The district court did not abuse its discretion in allowing Weber to file out of time on this basis.

3.    Summary Judgment

The district court granted summary judgment to Fisher and Weber, concluding they were entitled to qualified immunity because Brown did not establish a violation of his rights under the Fourth Amendment. According to the district court, Fisher had probable cause to arrest Brown, and it was reasonable for Fisher and Weber to search the passenger compartment of Brown's vehicle incident to the arrest.

We review a district court's grant of summary judgment de novo. *United States ex rel. Bahrani v. Conagra, Inc.*, 465 F.3d 1189, 1197 (10th Cir. 2006). "Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is

11

entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)). We review summary judgment orders deciding qualified immunity somewhat differently from other summary judgment decisions. *Medina v. Cram*, 252 F.3d 1124, 1128 (2001). Where a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff, who must establish: (1) the defendant's actions violated a constitutional or statutory right; and (2) the right at issue was clearly established at the time of the defendant's unlawful conduct. *Id.* If the plaintiff fails to meet this "heavy two-part burden," the defendant is entitled to qualified immunity. *Id.*

The district court correctly granted summary judgment to Fisher because his arrest of Brown was reasonable, as was his search of Brown's vehicle. However, the district court erred in granting summary judgment to Weber because his search of Brown's vehicle was not reasonable, as it was conducted while Brown was being transported by Fisher to the police station.

### A. The Arrest

"If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). "The constitutionality of an arrest does not depend on the arresting officer's state of mind." *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006). "All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest [the defendant] on *some* ground." *Id.*

The district court concluded Fisher had probable cause to arrest Brown for failing

12

to display his driver's license upon demand, in violation of state law. *See* Kan. Stat. Ann. § 8-244 ("Every licensee shall have his or her driver's license in his or her immediate possession at all times when operating a motor vehicle, and shall display the same, upon demand of any . . . peace officer . . . ."). There are two difficulties with this conclusion. First, viewing the facts in the light most favorable to Brown, it is not clear that Brown refused to provide his license, as he testified he was looking for his license in his briefcase at the time of his arrest. Second, it is not clear that Fisher could detain Brown after finding Brown's valid license. We have held "[i]f the police learn information that destroys their probable cause to arrest a defendant, the arrest may become illegal." *United States v. Edwards*, 242 F.3d 928, 934 (10th Cir. 2001).

We need not resolve either of these difficulties, for we can affirm the district court on another basis supported in the record. *See Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1164 n.17 (10th Cir. 2004) ("we may affirm on any basis supported by the record."). Brown does not dispute that he was driving with an inoperable headlight at nighttime at the time he was pulled over. This constitutes a violation of state law. *See* Kan. Stat. Ann. § 8-1728(a) (requiring "at least two (2) lighted head lamps"); Kan. Stat. Ann. § 8-1703(a)(1) ("Every vehicle . . . upon a highway within this state, at all times shall display lighted head and other lamps . . . : [f]rom sunset to sunrise"). Brown contends a traffic infraction is not sufficient to establish probable cause for arrest, because it is not an arrestable offense under Kansas law. *See* Kan. Stat. Ann. § 22-2401(d) ("[a] law enforcement officer may arrest a person . . . [where] [a]ny crime, except a traffic infraction . . . has been or is being committed by the person in the officer's view."). Brown is

incorrect.

Under *Atwater*, an officer may arrest an individual without violating the Fourth Amendment so long as he "has probable cause to believe that an individual has committed even a minor criminal offense in his presence." 532 U.S. at 354.[8] A traffic infraction is a crime under Kansas law. *See* Kan. Stat. Ann. § 21-3105 ("A crime is an act or omission defined by law and for which, upon conviction, a sentence of death, imprisonment or fine, or both imprisonment and fine, is authorized or, in the case of a traffic infraction . . . a fine is authorized . . . "); *City of Prairie Village v. Eddy*, 789 P.2d 66, 67 (Kan. Ct. App. 1990) (holding trial court erred in concluding a traffic infraction was not a crime because the Kansas Legislature amended Kan. Stat. Ann. § 21-3105 in 1984 to "include traffic infractions in the definition of crime").

Our case law suggests an arrest does not violate the Fourth Amendment when the arresting officer is within his jurisdiction and has probable cause to believe a crime has occurred, even if the crime is not one for which arrest is authorized under state law.[9] In

---

[8] The issue in *Atwater* was "whether the Fourth Amendment forbids a warrantless arrest for a minor criminal offense, such as a misdemeanor seatbelt violation punishable only by a fine." 532 U.S. at 323. Under Texas law, a seatbelt violation is an arrestable offense, though punishable only by a fine. *See id.*

[9] We recognize there is authority to the contrary. *See Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004) (noting the Circuits are divided on the issue of "whether an arresting officer's lack of authority under state or federal law to conduct an otherwise constitutionally valid arrest constitutes an unreasonable seizure under the Fourth Amendment."). *Compare United States v. Becerra-Garcia*, 397 F.3d 1167, 1173 (9th Cir. 2005) (holding "the reasonableness of a seizure depends exclusively on federal law" and noting "the well-established proposition that an arrest in violation of state law may still be constitutionally reasonable"); *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) ("the appropriate inquiry for a federal court considering a motion to suppress evidence seized by state police officers is whether the arrest . . . violated the Fourth Amendment.

*United States v. Green*, we stated: "It is . . . well established in this circuit that in federal prosecutions the test of reasonableness in relation to the Fourth Amendment protected rights must be determined by Federal law even though the police actions are those of state police officers." 178 F.3d 1099, 1105 (10th Cir. 1999) (quotations omitted); *see also United States v. Le*, 173 F.3d 1258, 1264 (10th Cir. 1999) (same). In other words, although "the question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes," a "violation of state law is not, without more, necessarily a federal constitutional violation." *United States v. Mikulski*, 317 F.3d 1228, 1232 (10th Cir. 2003) (quotations omitted).

In *Wilder v. Turner*, we considered "whether an officer has probable cause to arrest a driver that refuses to submit to a roadside sobriety test after the officer observes certain indicia of alcohol consumption." 490 F.3d 810, 811 (10th Cir. 2007). The district court had concluded the arrest violated the Fourth Amendment, "[d]eriving the legal framework

---

The fact that the arrest . . . may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended."); *United States v. Walker*, 960 F.2d 409, 416 (5th Cir. 1992) ("in determining whether to suppress the evidence at issue, the inquiry is whether the officers had probable cause to arrest [the defendant]"); *with Cole v. Neb. State Bd. of Parole*, 997 F.2d 442, 444 (8th Cir. 1993) ("An arrest by a state actor that is not authorized by state law is actionable under § 1983 as a seizure contrary to the Fourth Amendment."); *Malone v. County of Suffolk*, 968 F.2d 1480, 1482-83 (2d Cir. 1992) (whether officers have valid authority to arrest pursuant to state law affects constitutionality of arrest); *United States v. Trigg*, 878 F.2d 1037, 1041 (7th Cir. 1989) ("the reasonableness of an arrest depends upon the existence of two objective factors. First, did the arresting officer have probable cause to believe that the defendant had committed or was committing an offense. Second, was the arresting officer authorized by state and or municipal law to effect a custodial arrest for the particular offense.").

15

for its probable cause determination exclusively from Colorado case law." *Id.* at 813. We reversed, reasoning:

> [A] violation of state law cannot give rise to a claim under Section 1983. Section 1983 does not . . . provide a basis for redressing violations of *state law*, but only for those violations of *federal law* done under color of state law. While it is true that state law with respect to arrest is looked to for guidance as to the validity of the arrest since the officers are subject to those local standards, it does not follow that state law governs.

*Id.* at 814 (quotations and citations omitted). Similarly, in *Apodaca*, we noted "there is no Fourth Amendment impediment to . . . arrest" where the police officer had probable cause to arrest for a misdemeanor, even though the misdemeanor was not an arrestable offense under state law. 443 F.3d at 1289, n.2.

The Eighth Circuit reached the same result in a factually similar case. *United States v. Bell*, 54 F.3d 502 (8th Cir. 1995). The defendant in *Bell* was stopped by two police officers for riding a bicycle without a headlight in violation of Iowa law. The officers arrested the defendant for the violation and then conducted a search incident to the arrest, which revealed that Bell was carrying cocaine in his shoe. The district court granted Bell's motion to suppress concluding Bell's arrest was unlawful under Iowa law because the Iowa statutes permit only a citation, not an arrest, for operating a bicycle without a helmet. The Eighth Circuit concluded the district court erred in looking to Iowa law to determine the lawfulness of Bell's arrest. The court explained: "[W]e do not think Fourth Amendment analysis requires reference to an arrest's legality under state law. An arrest by state officers is reasonable in the Fourth Amendment sense if it is based on probable cause." *Id.* at 504 (citations omitted).

16

The Third Circuit recently analyzed this same issue and reached the same result. *See United States v. Laville*, 480 F.3d 187 (3d Cir. 2007). In *Laville*, the district court concluded that, when the officers arrested the defendant without a warrant, they had "[a]t most" probable cause to believe the defendant had entered the United States illegally in violation of 8 U.S.C. § 1325, which constitutes a misdemeanor. *Id.* at 191. Under Virgin Islands law, a misdemeanor must be committed in the presence of an officer to justify a warrantless arrest. *Id.* The court granted Laville's motion to suppress his post-arrest statements, concluding he was arrested in violation of the Fourth Amendment because the crime of illegal entry was committed before the officers arrived. *Id.*

The Third Circuit reversed, holding "the unlawfulness of an arrest under state or local law does not make the arrest unreasonable per se under the Fourth Amendment; at most, the unlawfulness is a factor for federal courts to consider in evaluating the totality of the circumstances surrounding the arrest." *Id.* at 196. The court reasoned a per se rule could result in "fifty different constitutional standards of arrest, each one dictated by a respective state's positive and decisional law . . . ." *Id.* at 193. Moreover, such a rule "could well create disparity in the constitutionality of arrests performed by state and federal officers for the same offense within the same state or territory." *Id.* Thus, "the validity of an arrest under state law must never be confused or conflated with the Fourth Amendment concept of reasonableness . . . ." *Id.* at 192. In a footnote, the court noted "[o]ther courts of appeal are in accord." *Id.* at 192, n. 2 (citing cases from the Seventh, Eighth and Tenth Circuits).

Based on our precedent and in light of the reasoning of *Bell* and *Laville*, we hold

17

Brown cannot establish that his Fourth Amendment rights were violated by Fisher's arrest. Though the arrest was not authorized under Kansas law, Fisher had probable cause to believe a criminal offense –- albeit a very minor one –- had been committed in his presence. Thus, Fisher is entitled to qualified immunity on Brown's claim for unlawful arrest.

### B. The Searches of Brown's Vehicle

While a search conducted without a warrant is usually per se unreasonable, warrantless searches are permissible under certain "well-delineated exceptions." *United States v. Franco*, 981 F.2d 470, 472 (10th Cir. 1992). For example, a warrant is not required for a search "incident to an arrest."[10] *Id.* In *New York v. Belton*, the Supreme Court held "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." 453 U.S. 454, 460 (1981). The rationale for this exception is the search prevents the arrestee from reaching for weapons or destructible evidence. *See Chimel v. California*, 395 U.S. 752, 764 (1969).

In *United States v. Lugo*, we discussed the rationale of *Belton* and *Chimel*, and held a warrantless search incident to an arrest is not valid if remote in time or place from the arrest. 978 F.2d 631, 634-45 (10th Cir. 1992). Thus, we concluded the search of the arrestee's passenger compartment was unlawful because it began after the suspect was arrested, removed from the scene, and en route to the police station. *Id.* at 635.

---

[10] It was not argued that Weber conducted an inventory search.

In 2004, the Supreme Court further defined when officers may search an automobile incident to a lawful arrest. *See Thornton v. United States*, 541 U.S. 615 (2004). In *Thornton*, the officer saw the defendant get out of his car, then approached the defendant on foot and asked for his driver's license. *Id.* at 618. The officer patted down the defendant, and found marijuana and cocaine in his pockets. *Id.* The officer arrested the defendant, handcuffed him, and placed him in the backseat of his patrol car. *Id.* Thereafter, the officer searched the defendant's car and found a handgun under the driver's seat. *Id.* The Fifth Circuit found the search to be reasonable under *Belton* because the defendant's car was in his immediate control. *Id.* at 619. The Supreme Court affirmed, holding "[s]o long as an arrestee is the sort of 'recent occupant' of a vehicle such as petitioner was here, officers may search that vehicle incident to arrest." *Id.* at 623-24.

Reading *Belton*, *Lugo* and *Thornton* together, we have held that a warrantless search can be a lawful incident of an arrest where the arrestee is detained on-scene at the time of the search. *See United States v. Brothers*, 438 F.3d 1068, 1070, 1073 (10th Cir.) (holding a search conducted "two to three minutes after the defendant had been handcuffed and his pockets searched" was "valid as a search incident to a custodial arrest"), *cert. denied*, 126 S. Ct. 2946 (2006); *see also United States v. Martinez*, 30 Fed. Appx. 900, 903-04 (10th Cir. 2002) (unpublished) (holding a search conducted after the defendant was arrested and placed in the back of the police car was valid as a search incident to arrest).[11] However, we have not upheld a search as a lawful incident of an

___

[11] Unpublished Orders and Judgments are not precedential. We mention *Martinez* as we would an opinion from another circuit. It is persuasive only to the extent of its

19

arrest where the arrestee is in a patrol car en route to the police station at the time the search begins. In *United States v. Dennison*, we held we could not determine whether a search was incident to a lawful arrest because the district court had not made a finding as to the arrestee's location when the search began. 410 F.3d 1203, 1210 (10th Cir.), *cert. denied*, 546 U.S. 955 (2005).

Here, the district court cited *Belton* and *Thornton*, but not *Lugo*. Of more concern, the district court did not distinguish between Fisher's search of Brown's vehicle and Weber's search of Brown's vehicle. The court stated: "Fisher had probable cause to arrest plaintiff, who was a recent occupant of the vehicle. It was therefore reasonable for the officers to search the passenger compartment." (R. Vol. I, Doc. 40 at 11.) The court's conclusion in this regard glosses over the fact that the two searches were not contemporaneous. Fisher searched Brown's vehicle immediately after placing Brown in his patrol car, in order to retrieve Brown's billfold. Weber, on the other hand, did not search Brown's vehicle until after Fisher and Brown had left the scene.[12] Thus, viewing the disputed facts in the light most favorable to Brown, Fisher's search was incident to a lawful arrest, under *Brothers*, while Weber's was not, under *Lugo*.

In order to defeat Weber's qualified immunity, Brown must establish not only that Weber's actions violated his Constitutional rights, he must also demonstrate that the right

reasoned analysis. *See* 10th Cir. R. App. P. 21.1(A).

[12] This is a disputed fact – Weber argues he did not search Brown's vehicle, but saw the beer can in plain view from outside the truck. Weber did not argue, either in the district court or on appeal, that his search was an inventory search or that the beer can would have been the subject of inevitable discovery, though these appear to be reasonable arguments.

20

at issue (here, to be free from an unreasonable search) was clearly established at the time of the defendant's unlawful conduct. *See Medina*, 252 F.3d at 1128. "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006) (quoting *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)). The law regarding the validity of a search conducted when the arrestee is being transported to a police station was "clearly established" by *Lugo*, decided in 1992. Thus, Weber is not entitled to summary judgment based on qualified immunity on Brown's unreasonable search claim.

We **DISMISS** Brown's appeal of the dismissal of his claims against the County for lack of jurisdiction, **REVERSE** the grant of summary judgment to Weber and **REMAND** for proceedings consistent with this order and judgment. As to Fisher's qualified immunity, the district court's judgment is **AFFIRMED**.

ENTERED FOR THE COURT


Terrence L. O'Brien
Circuit Judge

21

No. 06-3207, Brown v. Fisher

**HENRY, J.**, concurring,

I agree with the majority's disposition of Mr. Brown's claims against Officer Fisher and Officer Weber. I also agree that Mr. Brown's appeal of the dismissal of his claims against the County should be dismissed for lack of jurisdiction. I write separately because of my concerns about Mr. Brown's claim against Officer Fisher for an unlawful arrest. In particular, I am troubled by Officer Fisher's conceded lack of state law authority to arrest Mr. Brown for a minor traffic offense–driving with an inoperable headlight at nighttime. Unlike the majority, I think that an arrest made by an officer lacking authority under state law may be unreasonable under the Fourth Amendment, even if supported by probable cause.

Initially, I note that the Supreme Court's decision in <u>Atwater v. City of Lago Vista</u>, 532 U.S. 318 (2001), does not resolve this issue. There, Texas law expressly authorize[d] any peace officer [to] arrest without warrant a person found committing a violation of [certain] seatbelt laws." Id. at 323 (citations omitted). Thus, the Court was not required to address the Fourth Amendment principles that would apply when, as here, state law authority for the arrest was lacking.

As to the law of this circuit, our cases do establish that state law is not controlling in determining whether state officers have violated the Fourth Amendment. Nevertheless, state law may be relevant–and even crucial. See <u>United States v. Mikulski</u>, 317 F.3d 1228, 1232 (10th Cir. 2003) ([T]he question of compliance with state law may well be relevant in determining whether police conduct was reasonable for Fourth Amendment purposes.")

(quoting United States v. Baker, 16 F.3d 854, 856 n.1 (8th Cir. 1994).  For example, in

Marshall v. Columbia Lea Regional Hospital, 345 F.3d 1157, 1175 (10th Cir. 2003), we

looked to New Mexico law in considering  whether there were exigent circumstances

sufficient to justify a search.  And with regard to traffic stops, state or local law often

determines whether the initial detention is reasonable.  See, e.g., United States v.

Botero-Ospina, 71 F.3d 783, 786 (10th Cir. 1995) (en banc) (holding that "a traffic stop is

valid under the Fourth Amendment if the stop is based on an observed traffic violation or

if the police officer has reasonable articulable suspicion that a traffic or equipment

violation has occurred or is occurring").

For me, the difficulty here is that our cases do not set forth a clear standard for

determining when a state law violation may render an officer's conduct unreasonable

under the Fourth Amendment.  In his concurring and dissenting opinion in Abbott v. City

of Crocker, 30 F.3d 994 (8th Cir. 1994), the late Judge Richard Arnold offers helpful

guidance.

In Judge Arnold's view, "the key issue in determining whether a violation of state

law constitutes a violation of the Fourth Amendment, in the context of an arrest, is

whether the statute in question is designed to protect individuals from police behavior that

would otherwise be unreasonable ." Id. at 1000 (Arnold, J., concurring in part and

dissenting in part).  For Judge Arnold, that reasonableness inquiry requires the court to

consider "the policies and interests underlying the statutory prohibition of such arrests."

Id.  Thus, an officer's violation of a state or local statute may render his or her conduct

2

unreasonable if that statute "helps to protect the very interests underlying the Fourth Amendment, those of the individual in privacy and personal freedom, and, [that] at the same time, balances the interests of government in protecting society and making arrests in a safe, efficient, and constitutional manner." Id.; see also Cole v. Neb. Bd. of Parole, 997 F.2d 442, 444 (8th Cir. 1992) ( "An arrest by a state actor that is not authorized by state law is actionable under § 1983 as a seizure contrary to the Fourth Amendment.").

In this case, rather than holding Officer Fisher's lack of state law authority to arrest Mr. Brown is irrelevant to the Fourth Amendment question, I would undertake the inquiry suggested by Judge Arnold. Arguably, Kansas's limitation on police officer's authority to make arrests for minor traffic offenses protects important Fourth Amendment interests. Surely, for a motorist, the difference between merely receiving a citation for such an offense and being transported to jail may be substantial indeed. In that context, I do not think that the fact that there was probable cause that a motorist committed the offense should end the Fourth Amendment reasonableness inquiry.

I acknowledge that our circuit's decision in United States v. Apodaca, 443 F.3d 1286, 1289 (10th Cir. 2006), does not follow Judge Arnold's approach Indeed, some of the reasoning in Apodaca provides direct support for the majority's view.

However, I do not regard the statements in Apodaca cited by the majority as the law of the circuit. The Apodaca panel was responding to contentions made at oral argument that do not appear to have been made in the briefs and that were not necessary to the disposition of the case. See id. at 1289-90 (noting that the appellant's "sole preserved

3

challenge to her arrest" was that "[a police officer] lacked probable cause to believe that she had violated a restraining order" and thereby suggesting that the discussion in footnote 2 regarding the significance of a lack of authority to arrest was dicta).

Nevertheless, in light of the conflicting authority cited by the majority, it is evident that Judge Arnold's approach is not clearly established law. Thus, I agree that Officer Fisher is entitled to qualified immunity on Mr. Brown's claim for an unlawful arrest.