**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 20, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

DEXTER LEEMON JOHNSON,

    Plaintiff – Appellant,

v.

JOHN MARLAR,

    Defendant – Appellee.

No. 19–7023
(D.C. No. 6:16-CV-00440-JHP-SPS)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT***
_____

Before **LUCERO**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

    Plaintiff-Appellant Dexter Johnson is incarcerated in the Oklahoma State

Penitentiary ("OSP") serving a 150-year sentence for shooting with intent to kill. He

appeals from the district court's order granting summary judgment in favor of

Defendant-Appellee John Marlar on his claim under 42 U.S.C. § 1983 for violation of

his Eighth Amendment rights. According to Johnson, Marlar acted with deliberate

indifference to his serious medical needs by failing to treat his hemorrhoids in an

_____

* After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

effective and timely manner, ultimately resulting in an emergency room visit for anemia. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.

We only summarize the medical record, which is thoroughly described in the district court's opinion and order. Between October 2012 (when Johnson first submitted a Request for Health Services ("RHS") to deal with bleeding) and February 2017 (when Johnson received a hemorrhoidectomy), Johnson received over 30 instances of medical treatment related to his hemorrhoids alone. ROA Vol. I at 139.[1] In total, during this period, medical personnel interacted with Johnson over 50 times—including examinations, treatments, scheduling for future appointments, and responding to his administrative requests. *Id.* at 129–34. During the medical consultations that occurred within OSP, Marlar generally served as the signing provider.

On appeal, Johnson raises four claims: (1) the district court failed to consider his responses to Marlar's Motion for Summary Judgment and therefore erred in its ruling; (2) the district court's denial of his Motion for an Evidentiary Hearing constituted an abuse of discretion; (3) the district court's denial of his Motion for Default Judgment was also

---

[1] At the district court, Marlar filed a Motion to file attachments containing private health information to the Oklahoma Department of Corrections' ("ODOC") Special Report under seal out of an abundance of caution and respect for Johnson's privacy. The district court granted this Motion. To that end, we do not cite to, or quote, anything here that is not already: contained in (1) the district court's Opinion and Order; (2) the unsealed Volume 1 of the Record on Appeal; (3) or previously quoted by Johnson in his unsealed appellate briefing.

an abuse of discretion; and (4) that opposing counsel committed fraud upon the court. We address each claim in turn.

## II.

"We review a district court's grant of summary judgment de novo, using the same standard applied by the district court pursuant to Fed. R. Civ. P. 56(a)." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 461 (10th Cir. 2013) (citations omitted). Namely, "[s]ummary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (internal quotation marks omitted). "[W]e look at the factual record and the reasonable inferences to be drawn from the record in the light most favorable to the non-moving party." *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006) (citation omitted).

The district court granted summary judgment to Marlar on three grounds: first, Johnson did not satisfy the exhaustion requirements under the Prison Litigation Reform Act ("PLRA") on his request for treatment by a hematologist, nor did he provide enough evidence to establish his § 1983 deliberate indifference claim. ROA Vol. I at 137–41. Additionally, the district court found that Marlar, in his capacity as OSP physician, was entitled to qualified immunity. *Id.* at 143.

We agree Johnson fails to address the exhaustion requirements under the PLRA, and so he has waived those claims. In fact, in his response to Defendant's Motion for Summary Judgment, Johnson "concedes his failure to exhaust administrative remedies regarding his request for treatment by a hematologist." *Id.* at 111. He also concedes his

3

injunctive claim is moot as he has already received a hemorrhoidectomy. *Id.* Therefore, we focus only on the merits of Johnson's remaining § 1983 deliberate indifference claim; his two procedural claims; and his allegation of fraud.

## A. Deliberate Indifference Claim

"A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Deliberate indifference "involves both an objective and a subjective component. The objective component is met if the deprivation is sufficiently serious." *Id.* (internal quotation marks omitted). And the "subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (internal quotation marks omitted). "A negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999). It is for this reason that we have "reiterated that the subjective component presents a high evidentiary hurdle to the plaintiffs." *Self*, 439 F.3d at 1232.

On appeal, Johnson argues that the district court failed to "consider" any of his responses to Marlar's Motion for Summary Judgment. Johnson contends this "deprived [him] of the right . . . [to] establish the presence of multiple genuine disputes of material facts." Aplt. Br. at 7. Examining the record and the district court's Opinion and Order reveals that the district court gave proper weight to Johnson's claims. We agree with the district court that Johnson fails to establish deliberate indifference.

4

As best we understand, Johnson's deliberate indifference claim is that Marlar violated his constitutional rights in providing him ineffective treatment. *See id.* at 8–9. Under this theory, Johnson asserts he would not have suffered from severe anemia or required an emergency room visit if he had received a timely hemorrhoidectomy. We need not address the objective component of his claim, because his claim clearly fails on the subjective component.

We agree with the district court that the evidence does not support an inference that Marlar was deliberately indifferent to Johnson. Rather, our review of the record shows that Marlar repeatedly responded to Johnson's conditions with an array of medications and treatment plans designed to address the ailments. To that end, Marlar oversaw the provision of suppositories, stool softeners, ointments, and fiber for Johnson. ROA Vol. I at 129–33. Medical staff administered blood tests, prescribed antibiotics, disseminated medical snacks, and doubled meal portions to address Johnson's conditions. *See, e.g.*, *id.* at 130–34.

The evidence indicates that Johnson was provided, rather than denied, medical attention every time he sought treatment. While Johnson believes surgery should have been immediately administered, an inference of deliberate indifference cannot be drawn simply because he "disagrees with a diagnosis or a prescribed course of treatment." *Perkins*, 165 F.3d at 811. Marlar's decision to refrain from immediately operating is

5

indicative of a rational course of treatment[2]—attending to Johnson's conditions with the least invasive option before progressing to more extreme measures like surgery.[3]

Johnson also claims that all of Marlar's treatment was ineffective. Nonetheless, "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings." *Self*, 439 F.3d at 1230 (internal quotation marks omitted). And Johnson's assertion stands in conflict with the record. *See, e.g.*, ROA Vol. I at 130 (noting that an April 2015 periodic physical examination indicated that Johnson reported no physical issues after years of medical treatment).

---

[2] Neither do we believe this case reveals negligence. But even if Marlar was negligent, "the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment." *Self*, 439 F.3d at 1232. When, as here, Marlar "order[ed] treatment consistent with the symptoms presented and then continue[d] to monitor the [inmate's] condition, an inference of deliberate indifference is unwarranted under our case law." *Id.* at 1232–33.

[3] Johnson's claim also fails, for lack of causation, which is a necessary element of a § 1983 deliberate indifference claim. *See Daniels v. Gilbreath*, 668 F.2d 477, 480 (10th Cir. 1982). Beyond October 20, 2012—when Johnson first complained about bleeding—the record contains no facts supporting the inference that Marlar's actions caused Johnson's January 2016 hospitalization for acute anemia. Dr. Yolette Louis, Johnson's treating physician at the hospital, noted in her report that his hemorrhoids were "[u]nlikely to be the source of his severe anemia." ROA Vol. I at 140. In fact, Dr. Louis points to Johnson's own admission that he has suffered from anemia since he was a little boy as the likely cause for his emergency room visit. *Id.* The record is devoid of any facts suggesting Marlar's actions—or inaction—caused Johnson's acute anemia.

We agree with the district court that Johnson did not create a genuine issue of material fact as to whether Marlar either knew about and failed to treat Johnson's conditions or otherwise consciously disregarded Johnson's medical needs.[4]

## B. Denial of Evidentiary Hearing

On appeal, Johnson makes two procedural arguments. First, he claims the district court improperly denied his Motion for an Evidentiary Hearing. At the district court, Johnson moved under Fed. R. Civ. P. 72(b)(2) for an evidentiary hearing and objection to an order of the Magistrate Judge assigned to the case. ROA Vol. I at 4. On the same day, the district court struck the motions, citing the Eastern District of Oklahoma's Local Civil Rule 7.1(b)(2). *Id.* Under this local rule, objections and motions cannot be combined into a single pleading. *Id.*

We review a district court's application of a local rule for abuse of discretion, considering "(1) the degree of actual prejudice to the defendant[s]; (2) the amount of interference with the judicial process; [and] (3) the culpability of the litigant." *Murray v. Archambo*, 132 F.3d 609, 611 (10th Cir. 1998) (alterations in original) (internal quotation marks omitted).

Johnson argues that the application of Local Civil Rule 7.1(b)(2) conflicts with Fed. R. Civ. P. 83(a)(2). Rule 83(a)(2) states that local rules imposing a requirement in

---

[4] We need not decide whether Marlar is entitled to qualified immunity, an alternative ground the district court ruled on, because we find that Johnson has not established deliberate indifference.

7

form "must not be enforced in a way that causes a party to lose any right because of a nonwillful failure to comply." Fed. R. Civ. P. 83(a)(2).

But Johnson's combined motion for an evidentiary hearing with his objection to a magistrate order into a single pleading does not qualify as a nonwillful defect in form. In *Dunford v. Young*, a pro se litigant failed to respond to the defendant's motion to dismiss within the 15-day timeframe required by Local Civil Rule 7.1(B). We neither excused this mistake nor characterized this as a nonwillful failure to comply. 166 F.3d 346 (10th Cir. 1998) (unpublished). And in *Georgacarakos v. Watts*, we found the district court did not abuse its discretion in dismissing a case when the pro se litigant failed to use the proper forms as required by a local rule. 368 F. App'x 917, 918–19 (10th Cir. 2010) (unpublished).

Here, Johnson improperly combined his motions into a single pleading contrary to Local Civil Rule 7.1(b). Although he is proceeding pro se, he "must follow the same [local district court] rules of procedure that govern other litigants." *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). As such, the district court's denial of the motion for an evidentiary hearing is not an abuse of discretion.

## C. Denial of Johnson's Motion for Default Judgment

Johnson's second procedural argument is that the district court improperly denied his Motion for Default Judgment and Motion for Confession of Judgment against Marlar. We review the district court's denial of a motion for default judgment for an abuse of discretion. *See Ashby v. McKenna*, 331 F.3d 1148, 1152 (10th Cir. 2003). The district court denied Johnson's motions due to improper service of Marlar. ROA Vol. 1 at 4.

8

On appeal, Johnson asserts service was proper because the officer within the OSP mail room is authorized to receive service on behalf of Marlar. Therefore, Johnson believes this employee acted as an agent for Marlar. Aplt. Br. at 18–21. Because Johnson is suing Marlar in both his individual and official capacity, we must examine the method of service in both capacities.

In Marlar's individual capacity, service by mail may only be accomplished by "mailing a copy of the summons and petition by certified mail, return receipt requested and delivery restricted to the addressee." Okla. Stat. Ann. tit. 12, § 2004(C)(2)(b) (2019). Acceptance of service by mail by "a person who is fifteen (15) years of age or older who resides at the defendant's dwelling house or usual place of abode shall constitute acceptance or refusal by the party addressed." *Id.* at § 2004(C)(2)(c). Although officers working within the mailroom may satisfy the age requirement, the OSP is not Marlar's usual place of abode. As such, the district court's finding of improper service on Marlar in his individual capacity is not an abuse of discretion.

The process for serving Marlar in his official capacity is the same as that against the state. According to Oklahoma state law, service upon a state is accomplished "by delivering a copy of the summons and of the petition to the officer or individual designated by specific statute" or to "the chief executive officer or a clerk, secretary, or other official whose duty it is to maintain the official records of the organization." *Id.* at § 2004(C)(1)(c)(5); *see also* Fed. R. Civ. P. 4(j)(2).

Mail room attendants are not statutorily authorized to act as agents for proper service nor are they charged with maintaining the official records of the organization. In

9

*Brown v. Fisher*, a pro se plaintiff filed a motion for default judgment on the grounds the defendant did not file a timely response to the complaint. 251 F. App'x 527, 533 (10th Cir. 2007) (unpublished). Relying on Fed. R. Civ. P. 6(b), the defendant requested an extension of time to file, because the plaintiff improperly served an administrative assistant within the Kansas Highway Patrol's office. *See* Fed. R. Civ. P. 6(b) (permitting an extension of time "if the party failed to act because of excusable neglect"). We accepted the defendant's argument that the delay resulting from the improper service constituted "excusable neglect." *Brown*, 251 F. App'x at 533.

This is a situation functionally identical to *Brown*. Here, a mail room attendant, instead of an administrative assistant, received Marlar's mail. Although we recognize Johnson properly mailed the summons to the best of his knowledge, the fact remains that the mail room attendant is not authorized to accept restricted delivery mail on Marlar's behalf. As a result, the district court's denial of these Motions is not an abuse of discretion due to excusable neglect on Marlar's part.

### D. Allegation of Fraud by Opposing Counsel

Finally, Johnson alleges that opposing counsel "coached and encouraged" Marlar to file a falsified affidavit concerning his failure to respond due to improper service. Aplt. Br. at 27. There is no evidence to support this allegation in the record, and it is therefore dismissed as frivolous.

### III.

Johnson concedes that he waived his request to see a hematologist due to his failure to satisfy the exhaustion requirements under the PLRA. Similarly, because he

10

received a hemorrhoidectomy, his injunctive claim is moot. Johnson's remaining deliberate indifference claim fails to overcome the required evidentiary hurdle. We also find the district court's denial of an evidentiary hearing and default judgment is not an abuse of discretion. Finally, Johnson's remaining allegation of fraud is purely conclusory. Accordingly, the district court did not err in granting summary judgment. We therefore **AFFIRM**.

Entered for the Court

Allison H. Eid
Circuit Judge

11