**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 22 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENHE CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

     v.

VICTOR THEODORE MARTINEZ,

     Defendant-Appellant.

No. 00-1447

(99-CR-413-WM)

(D. Colorado)

---

**ORDER AND JUDGMENT** [*]

---

Robert G. Levitt, Denver, Colorado, for the defendant-appellant.

James C. Murphy, Assistant United States Attorney (Thomas L. Strickland, United States Attorney, and James R. Allison, Assistant United States Attorney with him on the brief), Denver, Colorado, for the plaintiff-appellee.

Before **HENRY** , **BALDOCK** ,[**] and **MURPHY** , Circuit Judges.

---

Victor Theodore Martinez appeals (1) the denial of his motion to suppress

evidence and (2) his subsequent sentence of 235 months' imprisonment for

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Judge Baldock vouched in for oral arguments.

violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) (possession of a firearm by a felon). As to the denial of the motion to suppress, Mr. Martinez argues that certain police officers illegally searched his vehicle. As to the sentencing concerns, Mr. Martinez challenges both the district court's enhancement of his sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) (the "ACCA"), and the district court's refusal to depart downward from the Sentencing Guidelines ("USSG"). As to the ACCA enhancement, Mr. Martinez contests (a) the use of a particular prior conviction where that conviction was based on an Alford plea pursuant to North Carolina v. Alford, 400 U.S. 25, 31 (1970); (b) the characterization of another prior conviction (for attempted burglary) as premised upon conduct constituting a crime of violence; and (c) the application of the ACCA enhancement in the calculation of his criminal history category. He also maintains that the government failed to give him timely notice of its intent to seek an enhancement under the ACCA. Our jurisdiction is pursuant to 18 U.S.C. § 1291 and, for the reasons set forth below, we affirm the denial of the motion to suppress and we affirm Mr. Martinez's conviction and sentence.

# I. BACKGROUND

On November 16, 1999, at approximately 4:00 p.m., Isadore Romero reported to police that Mr. Martinez had been at Mr. Romero's house driving a black sport utility vehicle. Mr. Romero observed Mr. Martinez talking to Mr. Romero's son, Ray Romero. Isadore Romero advised Colorado Springs Police Officer Jeff Jensen that Mr. Martinez and Ray Romero appeared to be having an argument, and that he (Isadore Romero) observed Mr. Martinez seated in the driver's position with a black pistol in his lap.

Approximately thirty minutes earlier, Officer Jensen had observed Mr. Martinez driving a black Isuzu Trooper (a type of sport utility vehicle) in the vicinity of a liquor store in the Colorado Springs area, had run a computer check, and had learned that Mr. Martinez's license was suspended. Officer Jensen was also aware that Mr. Martinez was a convicted felon and prohibited from possessing a firearm. Officer Jensen had also recognized another gentleman, Jerome Ambers, in the passenger seat of the vehicle. At the time, Officer Jensen was distracted by a higher priority call and was unable to attempt to approach Mr. Martinez. However, around 5:00 p.m. that same day, after receiving the report from Mr. Romero, Officer Jensen obtained the cellular telephone number for Mr. Ambers and called Mr. Ambers to see if Mr. Ambers was still with Mr. Martinez. Mr. Ambers confirmed that he was still with Mr. Martinez, and provided Officer

Jensen with the location. Officer Jensen requested other units be dispatched to this area.

At approximately 6:00 p.m., Officer Jackson Andrews observed the black Isuzu Trooper and recognized Mr. Martinez as the driver. Officer Andrews knew of Isadore Romero's report and also knew of Mr. Martinez's status as a convicted felon. Officer Andrews radioed that he had located Mr. Martinez. Officer Andrews then activated his emergency lights and approached the Isuzu Trooper. Officer Andrews observed the Isuzu accelerate quickly in reverse, striking the police car. The Isuzu then accelerated forward and began traveling west.

Officer Michael Roy, who was nearby, followed Officer Andrews in a brief pursuit of Mr. Martinez. Mr. Martinez soon stopped his vehicle. The officers removed Mr. Martinez from the vehicle and placed him under arrest. Officer Roy put Mr. Martinez in the back of Officer Roy's police car and returned to the Isuzu. Officer Roy glanced into the vehicle and observed a black handgun toward the rear compartment area. Officer Roy secured the weapon for placement into evidence.

Mr. Martinez was convicted in the State of Colorado of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1) and was sentenced to 235 months' imprisonment. Prior to trial, Mr. Martinez filed a

-4-

motion to suppress the firearm obtained from his vehicle.  The district court denied the motion.

## II. DISCUSSION

A. Motion to Suppress

When we review a district court's denial of a motion to suppress, we accept "the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government.  However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law and is reviewed de novo under the totality of the circumstances." United States v. Basham, 268 F.3d 1199, 1203 (10th Cir. 2001).

Mr. Martinez challenges the denial of his motion to suppress the firearm on several grounds.  First, he contends that any probable cause that may have existed when Isadore Romero first complained to the officer had become stale by the time Officer Andrews stopped and arrested Mr. Martinez a few hours later.  Mr. Martinez maintains that Officer Andrews never intended to follow up on the complaint, and saw Mr. Martinez only by happenstance.

Second, Mr Martinez contends that the search of the vehicle was overly intrusive and not supported by probable cause.  He claims that because he was placed in the police cruiser, safety concerns did not justify the search of his entire

vehicle.  Third, and similarly, Mr. Martinez contends that there was no rationale for a search incident to arrest once he was removed to the patrol car.  Fourth and finally, Mr. Martinez contends that the vehicle search was also invalid as an inventory search.

We find no error.  Rather, we determine that the police officers did possess probable cause to stop and arrest Mr. Martinez and, further, that the police officers properly searched the Isuzu Trooper as a vehicle search incident to arrest. We first consider the police officers' probable cause to stop and arrest Mr. Martinez.  The determination of whether information is stale depends on "the nature of the criminal activity, the length of the activity, and the nature of the property to be seized."  United States v. Snow, 919 F.2d 1458, 1460 (10th Cir. 1990) (quotation marks omitted).  Where the offense in question is "ongoing and continuing[,] . . . . the passage of time is not of critical importance."  Sturmoski, 971 F.2d 452, 457 (10th Cir. 1992).  The district court's finding that Officer Jensen observed Mr. Martinez in the same vehicle just hours before the stop and arrest is not clearly erroneous.  Furthermore, the reports that Mr. Martinez was driving the vehicle without a license and possessed a gun were also received only hours before the stop and arrest.  Cf. United States v. Iiland, 254 F.3d 1264, 1268 (10th Cir. 2001) (upholding probable cause to support search warrant where primary information underlying warrant was four to six months old).  Moreover,

the officers pursued Mr. Martinez after he had intentionally backed his vehicle into the officer's car and departed from the scene and this act gave the officers further cause to pursue Mr. Martinez. The officers had ample probable cause to pursue and subsequently arrest Mr. Martinez.

Second, we consider the propriety of the police officers' warrantless search of Mr. Martinez's vehicle. This search was valid as a search incident to arrest. See New York v. Belton, 453 U.S. 454, 460 (1981) (holding that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "examine the contents of any containers found within the passenger compartment") (footnotes omitted); United States v. Olguin-Rivera, 168 F.3d 1203, 1204-07 (10th Cir. 1999) (extending Belton search to covered cargo area of sport utility vehicle). We thus affirm the denial of the motion to dismiss.

B. Sentence Enhancement

Mr. Martinez next challenges the application of the ACCA enhancement in the calculation of his criminal history category. See 18 U.S.C. § 924(e). He challenges: (1) the use of a conviction reached pursuant to an Alford plea as the basis for a prior sentence; (2) the characterization of a conviction for attempted

burglary as a crime of violence; and (3) the application of the ACCA

enhancement as a violation of <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000).

On April 19, 1995, Mr. Martinez pleaded guilty to the crime of felony

menacing/use of a deadly weapon, committed in 1994. On April 5, 1996 he

pleaded guilty to (1) attempted first degree burglary, committed in 1995, and (2)

conspiracy to commit aggravated robbery and first degree burglary, committed on

January 6, 1996. The ACCA applies when a defendant has three previous violent

felony convictions committed on occasions different from one another.. <u>See</u> 18

U.S.C. § 924(e)(1). Because the district court determined that Mr. Martinez had

acquired three such convictions, the court imposed the ACCA sentence

enhancement.

We review de novo sentence enhancements imposed under the ACCA. <u>See</u>

<u>United States v. Bull</u>, 182 F.3d 1216, 1217 (10th Cir. 1999). We hold that Mr.

Martinez has the three requisite convictions for application of the ACCA.

1. <u>Alford</u> plea

First, Mr. Martinez attempts to differentiate his conviction for felony

menacing that resulted from a plea entered pursuant to <u>North Carolina v. Alford</u>,

400 U.S. 25 (1970). An <u>Alford</u> plea permits a defendant to maintain his

innocence while agreeing to forego his right to a trial. <u>Id.</u> at 37 ("An individual

accused of [a] crime may voluntarily, knowingly, and understandingly consent to

the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime."). Because the USSG did not enumerate an Alford disposition in the definition of "prior sentence," Mr. Martinez contends, this conviction should not be counted as a prior felony conviction. See USSG §2K2.1, Applic. Note 15; § 4A1.2(a)(1) (defining "prior sentence" as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere"); cf. USSG § 4A1.2(a)(4) ("The term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense.").

We agree with the government that an Alford plea is an "adjudication of guilt" under § 4A1.2(e)(1) and therefore can properly be counted as a prior sentence under the USSG. We also note that the state trial court could not have accepted a plea under Alford unless there existed independent factual evidence of Mr. Martinez's guilt. See United States v. Mackins, 218 F.3d 263, 268 (3d Cir. 2000) (noting that "there must always exist some factual basis for a conclusion of guilt before a court can accept an Alford plea; indeed, a factual basis for such a conclusion is an essential part of an Alford plea") (internal quotation marks omitted). "In the face of a claim of innocence[,] a judicial finding of some factual basis for defendant's guilt is an essential part of the

constitutionally-required finding of a voluntary and intelligent decision to plead guilty." Willett v. Georgia, 608 F.2d 538, 540 (5th Cir. 1979). We therefore reject Mr. Martinez's contention and conclude that the district court properly adduced his " Alford plea [with] the same finality . . . accord[ed] any other 'adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere.'" Mackins, 218 F.3d at 269 (quoting § 4A1.2(a)(1)). [1]

2. Crime of violence

Mr. Martinez also challenges the characterization of his previous conviction for attempted first degree burglary as a "crime of violence." 18 U.S.C. § 924(e)(1). Under the USSG:

---

[1] The Third Circuit has further noted:

[A] Note to § 8A1.2 states that "'[p]rior criminal adjudication' means conviction by trial, plea of guilty (including an Alford plea), or plea of nolo contendere." § 8A1.2, comment. (n. 3(g)). Chapter Eight of the Guidelines, dealing with the sentencing of organizations, however, was added by amendment on November 1, 1991. In contrast, the language of § 4A1.2(a)(1) at issue in this case was enacted on November 1, 1987. Not to have included an Alford plea in § 4A1.2(a)(1) and its inclusion in § 8A1.2, four years later, cannot be read to evidence an intent on the part of the drafters of the Guidelines to exclude Alford pleas from § 4A1.2(a)(1). To the contrary, the Note to § 8A1.2 could be read as evidencing an understanding by the drafters of § 8A1.2 that, as we have concluded, an Alford plea is nothing more than a plea of guilty.

United States v. Mackins, 218 F.3d 263, 268 n.3 (2000).

(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that–

> (i) has as an element the use, attempted use, or **threatened use of physical force** against the person of another; or
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . .

18 U.S.C. § 924(e)(2) (emphasis added). The government relies on § 924(e)(2)(i) and maintains that Colorado's definition of attempted first degree burglary satisfies the requirement of the element of the "threatened use of physical force." Id.

We review de novo a sentence enhancement under § 924(e). See United States v. Adkins, 196 F.3d 1112, 1118 (10th Cir. 1999). We review the entire record and supporting documentation to determine the legitimacy of the sentences imposed below. See id.

Under the analytic approach mapped out in Taylor v. United States, 495 U.S. 575 (1990), the sentencing court, when applying § 924(e), must "look only to the fact of conviction and the statutory definition of the prior offense." Id. at 602 (footnotes omitted). Because the enhancement statute does not specifically list the crime of attempted burglary as a violent felony, we look to whether attempted burglary "is a crime that either has an element of use, attempted use[,] or threatened use of physical force against the person of another, or whether that

-11-

crime involves conduct that presents a serious potential risk of physical injury to another." See United States v. Phelps , 17 F.3d 1334, 1342 (10th Cir. 1994). We look to elements of the relevant state statutes and we are also authorized to look to the charging documents if necessary. See Taylor , 495 U.S. at 602 (outlining inquiry as to state statute's definition of "burglary" under § 924(e)).

> Under Colorado law:
>
> A person commits first degree burglary if the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime . . . against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person . . . **assaults or menaces any person, or the person . . . is armed with explosives or a deadly weapon.**

Colo. Rev. Stat. Ann. § 18-4-202 (emphasis added). "A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense." Id. § 18-2-101.

We also note that the charging document alleged that Mr. Martinez was "armed with a deadly weapon, to wit: a baseball bat and did assault and menace" another person. Aplt's App. vol. I, at 38 (Information). We hold that Mr. Martinez's conviction for attempted first degree burglary under Colorado law necessarily contained the element of the "threatened use of physical force" – the threatening of another with a baseball bat. § 924(e)(2)(B). Furthermore, Mr.

Martinez does not dispute that he voluntarily entered into a plea of guilty in regard to this offense. Thus, Mr. Martinez has three prior violent felony convictions, and the district court properly applied the ACCA enhancement.

3. Apprendi

Relying on Apprendi v. New Jersey, 530 U.S. 466 (2000), Mr. Martinez next challenges the application of the ACCA enhancement in the calculation of his criminal history category. See 18 U.S.C. § 924(e); USSG § 4B1.4. The district court determined that Mr. Martinez had three prior violent felony convictions and was therefore subject to the enhancement. This finding is not subject to challenge under Apprendi. See United States v. Martinez-Villalva, 232 F.3d 1329, 1331-32 (10th Cir. 2000).

C. Failure to give notice

Mr. Martinez next contends he did not receive notice of the government's intent to rely on prior convictions as a sentencing enhancement until one month before trial and that this lack of notice constituted a due process violation. He avers that he might have chosen to plead guilty rather than proceed to a jury trial had he been apprized earlier of the government's intention to seek a sentencing enhancement. He did not receive this notice until after the jury verdict.

We review de novo Mr. Martinez's assertion that his due process rights were violated. United States v. Walters, 269 F.3d 1207, 1215 (10th Cir. 2001).

First, we note that procedural due process does not require pre-trial notice of the possibility of enhanced sentencing for recidivism. Procedural due process requires only reasonable notice of, and an opportunity to be heard concerning, the prior convictions. See Oyler v. Boles, 368 U.S. 448, 452 (1962) ("Nevertheless, a defendant must receive reasonable notice and an opportunity to be heard relative to the recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."); cf. United States v. Gregg, 803 F.2d 568, 570 (10th Cir. 1986) (noting that ACCA does "not prescribe any specific method of alleging . . . prior convictions" in pursuit of enhancement). Although we recognize that the ACCA is a sentence enhancement statute that does not create a separate offense, we have not previously addressed the concept of "reasonable notice" with respect to enhancements sought under the ACCA.

We agree with the government that the actual notice given to Mr. Martinez was sufficient, and therefore we hold that there was no due process violation. In fact, under United States v. Johnson, 973 F.2d 857, 860 (10th Cir. 1992), we noted that the district court *must* invoke a § 924(e)(1) enhancement if it comes to the court's attention that the defendant meets the requirements of the subsection. As we have observed in a previous unpublished decision, other courts have more specifically addressed the notice issue as it pertains to specific prior convictions.

United States v. Weeden, No. 96-6313, 1997 WL 375345, at **2 (10th Cir. July 8, 1997) (collecting cases).

Here, each of the previous convictions was set out in the presentence investigation report ("PSR"), which was made available before sentencing, giving Mr. Martinez ample opportunity to investigate his earlier convictions and to challenge the applicability of those convictions under § 924(e)(1). He also had opportunity to challenge the characterization of his previous convictions in his written objections to the PSR and at his sentencing hearing. See Aple's Second Supp. App. at 2, 9-15, 18 (PSR, dated May 26, 2000); id. at 27 (Aplt's objections to PSR, dated June 16, 2000); id. at 36 (Aplt's pro se objections to PSR, dated June 14, 2000); Aplt's App. vol. II, at 478-490 (Sentencing Hr'g Tr., dated Oct. 5, 2000, at 10-22). We agree with every circuit that has addressed the issue that formal, pretrial notice is not constitutionally required.[2] Thus, we hold that due

_____

    [2] See United States v. Mack, 229 F.3d 226, 231 (3d. Cir. 2000) (noting that "[e]very circuit that has addressed the issue has concluded that formal, pretrial notice is not constitutionally mandated"); United States v. O'Neal, 180 F.3d 115, 126 (4th Cir. 1999) (noting that "the listing of these convictions in the PSR is more than adequate to provide such notice"); United States v Mauldin, 109 F.3d 1159, 1163 (6th Cir. 1997) (affirming sentence with ACCA enhancement where defendant received notice before sentencing); United States v. Bates, 77 F.3d 1101, 1105 (8th Cir. 1996) (holding no due process violation where "[t]wo of the three convictions relied upon to enhance [the defendant's] sentence were proven at trial" and the third "was fully set out in the presentence investigation report"); United States v. Gibson, 64 F.3d 617, 625-26 (11th Cir. 1995) (holding that defendant "received reasonable notice of his prior convictions and an opportunity to challenge them to satisfy due process" where "[a]lthough the government listed
(continued...)

process does not require the government to provide formal, pretrial notice of its intention to seek a sentence under the ACCA. See also United States v. Alvarez, 972 F.2d 1000, 1006 (9th Cir. 1992) ("We . . . find no support for the contention that the predicate felonies must be alleged in some formal notice pleading."). We further hold that, in this case, Mr. Martinez had sufficient, actual notice, prior to sentencing, of the government's intention to use each of his convictions for enhancement purposes and there is no due process violation.

D. Downward Departure

Mr. Martinez filed a motion for a downward departure pursuant to USSG 5K2.13, in part based upon his diminished capacity. [3] "We have jurisdiction to

---

[2](...continued)
only one prior conviction in the indictment . . . the government filed a response to the district court's standing discovery order prior to sentencing" in which the government "included a print-out of [the defendant's] prior criminal history and copies of each information and judgment filed in state court relating to three of [defendant's] prior state convictions"); United States v. Hardy, 52 F.3d 147, 150 (7th Cir. 1995) (finding no due process violation where defendant "did not receive *formal* notice until the day of sentencing that he could be sentenced as an armed career criminal" but "received actual notice much earlier"); United States v. Craveiro, 907 F.2d 260, 264-65 (1st Cir. 1990) (holding no constitutional violation where "the government notified defendant of the ACCA's applicability through its Information Charging Prior Offenses, filed over a month before the original date set for sentencing").

[3] Section 5K2.13 authorizes the court, within its discretion, to depart downward for diminished mental capacity if the offense committed is non-violent. Section 5K2.0 is the general provision providing the court with authority to consider aggravating or mitigating circumstances in granting a downward departure.

review a district court's refusal to depart downward only when 'the district court refused to depart because it erroneously interpreted the USSG as depriving it of the power to depart based on the proffered circumstances.'" United States v. Rowen, 73 F.3d 1061, 1063 (10th Cir. 1996) (quoting United States v. Barrera-Barron , 996 F.2d 244, 245 (10th Cir. 1993)).

The record indicates that the district court carefully considered the psychiatric report and determined that it could not "conclude that [Mr. Martinez's] actions on the day in question or the prior events were what the law recognizes as diminished capacity." Aplt's App. vol. II, at 546 (Sentencing Tr. Hr'g, dated Oct. 5, 2000, at 21). We hold therefore that the district court recognized its discretion to depart, and reluctantly concluded that such that such a departure was not appropriate. In expressing his reluctance the district court judge stated that he:

> just d[id] not have the ability to depart from what the law requires under these circumstances and what you are presented with. . . . I cannot do really anything other that to proceed to sentencing under the guidelines and I regret that that's my duty. Because if I had the luxury, if you will, of discretion, I would not sentence you as severely as the guidelines provide . . . . I will not depart from the guideline range . . . .

Aplt's App. vol. II, at 546-47 (Sentencing Hr'g Tr. dated Oct. 5, 2000, at 21-22). Although the first part of the above statement could be read, on its own, to imply that the court felt it lacked discretion to depart under any circumstances, such

would not be a fair reading, when taken in context of the record in its entirety. See United States v. Fortier, 180 F.3d 1217, 1231 (10th Cir. 1999) (reiterating that "we treat ambiguous statements made by district judges as though the judge was aware of his or her legal authority to depart but chose instead, in an exercise of discretion, not to depart"). A district court has no authority to depart on invalid grounds. When reviewed with the entirety of the transcripts of the sentencing hearings, the district court's statements show that the sentencing judge was aware of his power to depart on valid grounds but declined to do so. The denial of the downward departure was within the discretion of the district court, and we have no jurisdiction to review that decision. Cf. United States v. Slater, 971 F.2d 626, 634-35 (10th Cir. 1992) (remand necessary where district court erroneously held it was without authority under USSG § 5H1.4 to depart from the sentencing guidelines).

### III. CONCLUSION

For the reasons stated above, we AFFIRM Mr. Martinez's conviction.

Entered for the Court,

Robert H. Henry
Circuit Judge

-18-