FILED
United States Court of Appeals
Tenth Circuit

April 25, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

VICTOR THEODORE MARTINEZ,

Defendant-Appellant.

No. 07-1207
(D.C. Nos. 03-CV-409-WDM and
99-CR-413-WDM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

Following a jury trial in April 2000, Victor Theodore Martinez was
convicted in the United States District Court for the District of Colorado of being
a felon in possession of a firearm and was sentenced to 235 months'
imprisonment. We affirmed his conviction and sentence in *United States v.
Martinez*, 30 F. App'x 900 (10th Cir. 2002). Mr. Martinez then filed a motion

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

under 28 U.S.C. § 2255 to set aside his sentence. The district court denied the motion, prompting the instant appeal.

This court has issued a certificate of appealability (COA) to review whether Mr. Martinez received ineffective assistance of trial counsel and whether the district court should have conducted an evidentiary hearing to resolve the § 2255 motion. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), and we affirm.

## I. BACKGROUND

We take the following background facts from this court's order and judgment in Mr. Martinez's direct criminal appeal:

> On November 16, 1999, at approximately 4:00 p.m., Isadore Romero reported to police that Mr. Martinez had been at Mr. Romero's house driving a black sport utility vehicle. Mr. Romero observed Mr. Martinez talking to Mr. Romero's son, Ray Romero. Isadore Romero advised Colorado Springs Police Officer Jeff Jensen that Mr. Martinez and Ray Romero appeared to be having an argument, and that he (Isadore Romero) observed Mr. Martinez seated in the driver's position with a black pistol in his lap.
>
> Approximately thirty minutes earlier, Officer Jensen had observed Mr. Martinez driving a black Isuzu Trooper (a type of sport utility vehicle) in the vicinity of a liquor store in the Colorado Springs area, had run a computer check, and had learned that Mr. Martinez's license was suspended. Officer Jensen was also aware that Mr. Martinez was a convicted felon and prohibited from possessing a firearm. Officer Jensen had also recognized another gentleman, Jerome Ambers, in the passenger seat of the vehicle. At the time, Officer Jensen was distracted by a higher priority call and was unable to attempt to approach Mr. Martinez. However, around 5:00 p.m. that same day, after receiving the report from Mr. Romero, Officer Jensen obtained the cellular telephone number

for Mr. Ambers and called Mr. Ambers to see if Mr. Ambers was still with Mr. Martinez. Mr. Ambers confirmed that he was still with Mr. Martinez, and provided Officer Jensen with the location. Officer Jensen requested other units be dispatched to this area.

At approximately 6:00 p.m., Officer Jackson Andrews observed the black Isuzu Trooper and recognized Mr. Martinez as the driver. Officer Andrews knew of Isadore Romero's report and also knew of Mr. Martinez's status as a convicted felon. Officer Andrews radioed that he had located Mr. Martinez. Officer Andrews then activated his emergency lights and approached the Isuzu Trooper. Officer Andrews observed the Isuzu accelerate quickly in reverse, striking the police car. The Isuzu then accelerated forward and began traveling west.

Officer Michael Roy, who was nearby, followed Officer Andrews in a brief pursuit of Mr. Martinez. Mr. Martinez soon stopped his vehicle. The officers removed Mr. Martinez from the vehicle and placed him under arrest. Officer Roy put Mr. Martinez in the back of Officer Roy's police car and returned to the Isuzu. Officer Roy glanced into the vehicle and observed a black handgun toward the rear compartment area. Officer Roy secured the weapon for placement into evidence.

*Martinez*, 30 F. App'x at 902-03.

Mr. Martinez was indicted for being a felon in possession of a firearm. *See* 18 U.S.C. § 922(g)(1). The government offered a plea agreement contemplating a sentence of 92-115 months. At the time, Mr. Martinez was represented by the Federal Public Defenders Office. Mr. Martinez later retained attorney Shaun Kaufman, who allegedly failed to "address the pending proposed plea agreement with [Mr. Martinez]." Aplt. App. at 160 (Memorandum in support of 2255 motion).

Trial began in April 2000. Kaufman attempted to portray the firearm as belonging to Ambers. In pursuit of this theory, Kaufman elicited several hearsay

statements from Officer Jensen during cross-examination, including that Ambers admitted "that he [Ambers] had touched the pistol twice." Tr. of Proceedings at 82. According to Officer Jensen, Ambers stated that he had twice attempted to take the gun from Mr. Martinez, and that in doing so he may have left his fingerprints on it. Kaufman also elicited from Officer Jensen that during police questioning, Mr. Martinez said that Ambers "had the gun." *Id.* at 93. But not all of Kaufman's cross-examination supported his theory, as he elicited from Officer Jensen that Ambers had said that he had seen Mr. Martinez insert a live round into the gun. On redirect, Officer Jensen repeated both Ambers's description of the live-round incident and Mr. Martinez's claim that Ambers had the gun.

Kaufman later explained to the trial judge that he had not objected to the government's questioning of Officer Jensen about Ambers's statements because he (Kaufman) "thought [he had] kind of opened the door" and "thought [the prosecutor] was just completing what [he] had opened." *Id.* at 163. Kaufman also explained that he had spoken with Ambers's attorney and decided not to call Ambers as a witness because he (Kaufman) believed Ambers would invoke his privilege against self-incrimination. He did, however, propose calling Detective Dan Lake to testify (1) that in November 1998 he had arranged to purchase a "machine pistol" from Javon Crawford, who said that he had received the gun from Ambers, *id.* at 161-62, and (2) that he (Lake) "saw Crawford and Ambers in the same parking lot where this transaction occurred," *id.* at 162. The district

-4-

court took the proposal under consideration. For reasons that are not in the record, Kaufman apparently decided not to pursue Lake's testimony, although the court indicated, after the case was submitted to the jury, that it would have admitted Lake's testimony if Ambers had testified.

After this court affirmed Mr. Martinez's conviction and sentence on direct appeal, he filed his § 2255 motion. Among other things, he argued that Kaufman had provided ineffective assistance at trial because he (1) suffered from bipolar disorder and a methamphetamine addiction;[1] (2) failed to address the proposed plea agreement with Mr. Martinez; (3) failed to call Ambers and Detective Lake as witnesses; and (4) failed to object to the government's introduction of hearsay evidence. The district court denied Mr. Martinez's motion and accompanying request for an evidentiary hearing. He now appeals.

## II. DISCUSSION

### A. Standards of Review

"[W]e review the district court's legal rulings on a § 2255 motion de novo and its findings of fact for clear error." *United States v. Pearce*, 146 F.3d 771, 774 (10th Cir. 1998). "We review the district court's refusal to hold an evidentiary hearing for an abuse of discretion." *United States v. Harms*, 371 F.3d 1208, 1210 (10th Cir. 2004).

---

[1] In 2003 Kaufman was suspended from the practice of law for various acts of misconduct, some of which occurred contemporaneously with Mr. Martinez's trial.

B.  Assistance of Counsel

"[C]riminal defendants have a Sixth Amendment right to 'reasonably effective' legal assistance."  *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  This right is violated when (1) counsel's representation falls "below an objective standard of reasonableness," *Strickland*, 466 U.S. at 688, and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.

### 1.  Counsel's Mental Illness and Drug Addiction

Mr. Martinez argues that Kaufman's bipolar disorder and methamphetamine addiction "interfered with his effective representation."  Aplt. Br. at 16.  But as there is no claim that Kaufman's illness and addiction rendered him constructively absent and per se ineffective, *see United States v. Cronic*, 466 U.S. 648, 659-62 (1984), we must examine his actual performance during the trial, *see Bonin v. Calderon*, 59 F.3d 815, 838 (9th Cir. 1995).

### 2.  The Proposed Plea Agreement

The district court assumed that Kaufman performed deficiently regarding the proposed plea agreement, but ruled that Mr. Martinez failed to show prejudice.  We perceive no error.

Mr. Martinez contends that Kaufman "was ineffective in failing to at least proffer the existence of the plea agreement to his client and determine if Mr.

Martinez would have accepted the agreement." Aplt. Br. at 21. "[E]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." *United States v. Carter*, 130 F.3d 1432, 1442 (10th Cir. 1997). A defendant is prejudiced by counsel's deficient performance in regard to plea bargaining if there is "a reasonable probability that but for incompetent counsel [the] defendant would have accepted the plea offer and pleaded guilty." *Carter*, 130 F.3d at 1442.

Mr. Martinez, however, has not alleged that the attorney who negotiated the agreement failed to advise him about it, and Mr. Martinez's present counsel did not contest below that Mr. Martinez "may have seen [the proposed] plea agreement when represented by [the prior attorney]." *United States v. Martinez*, No. CV-03-WM-0409, Doc. 114 at 1 (Resp. in support of § 2255 motion). Moreover, at sentencing, Mr. Martinez indicated that he had entered guilty pleas in other cases, but adamantly insisted that he was innocent of the crime for which he was being sentenced. Although Mr. Martinez's attorney asserted in one of the § 2255 pleadings that Mr. Martinez would have accepted the plea agreement, this bald assertion is hardly sufficient to justify an evidentiary hearing, much less relief. The standard for obtaining an evidentiary hearing "is higher than notice pleading." *United States v. Cervini*, 379 F.3d 987, 994 (10th Cir. 2004). "District courts are not required to hold evidentiary hearings in collateral attacks without a firm idea of what the testimony will encompass and how it will support

a movant's claim." *Id*.; *see also United States v. Aiello*, 814 F.2d 109, 113-14 (2d Cir. 1987) ("Airy generalities, conclusory assertions and hearsay statements" do not warrant an evidentiary hearing). Mr. Martinez has failed to provide sufficient support for his claim that he was prejudiced by any failure of Kaufman to consult with him about a plea agreement. The district court properly rejected this claim without conducting an evidentiary hearing.

### 3. Witnesses

Mr. Martinez next argues that Kaufman's failure to call Ambers and Detective Lake as witnesses left the jury "with one impression[,] that it was Mr. Martinez who possessed the firearm." Aplt. Br. at 22. The district court found that Kaufman did not perform deficiently and, that even if he had, Mr. Martinez was not prejudiced "given the state of the record." Aplt. App. at 184. We conclude that there has been no showing of deficient performance.

Kaufman decided against calling Ambers as a witness because he believed that Ambers "would have claimed the Fifth Amendment on the stand." Tr. of Proceedings at 276. The prosecutor agreed, and aptly noted that "'neither the prosecution nor the defense may call a witness knowing that the witness will assert his Fifth Amendment privilege against self incrimination.'" *Id.* at 276-77 (quoting *United States v. Crawford*, 707 F.2d 447, 449 (10th Cir. 1983)). Further, even if Ambers would not have asserted the privilege, the value of his testimony would likely have been limited. Although he admitted to Officer Jensen that his

fingerprints may have been on the gun, he explained that he had attempted to disarm Mr. Martinez on two occasions. And if for some reason he would have claimed exclusive possession, the government could have impeached his testimony with his contrary statements to Officer Jensen.

As for Kaufman's failure to call Detective Lake, we cannot discern how his testimony would have been beneficial. We agree with the government's characterization of the testimony: "[T]he gist of the testimony from Detective Lake would have been that an unrelated suspect (Crawford), in an unrelated transaction [which occurred one year before the incident leading to Mr. Martinez's arrest] . . . made a hearsay declaration that another suspect who also was not on trial (Ambers) had supplied a weapon that was not at issue . . . ." Aplee. Br. at 13.

Therefore, we conclude that Kaufman did not perform deficiently in not calling Ambers or Detective Lake as a witness. An evidentiary hearing was unnecessary.

### 4. Hearsay Evidence

Mr. Martinez faults Kaufman for not objecting when Officer Jensen testified regarding statements made by Ambers "to the effect that Martinez possessed the firearm." Aplt. Br. at 22 (internal quotation marks omitted). It appears that Mr. Martinez is referring to Officer Jensen's redirect testimony about Ambers's description of the live-round incident. The district court rejected

Mr. Martinez's argument because of the absence of prejudice, stating that Mr. Romero testified that he saw Mr. Martinez in possession of a firearm and that there was evidence that the gun was found inside Mr. Martinez's vehicle.

Neither party to this appeal has provided this court with the cited testimony. Nevertheless, we determine that Kaufman did not perform deficiently. As Kaufman explained to the district court, he did not object because he had opened the door to Ambers's statements while cross-examining Officer Jensen. Kaufman apparently pursued that strategy because there was no other way to put Ambers's self-incriminating statements before the jury. And Kaufman's strategy was partially successful, in that Officer Jensen relayed Ambers's admission that his fingerprints might be on the gun, thereby suggesting that Ambers possessed the gun. Significantly, Mr. Martinez does not fault Kaufman for eliciting the hearsay testimony about Ambers that was helpful to his defense. There is likewise no complaint in regard to Kaufman's failure to object to Officer Jensen's redirect hearsay testimony that Mr. Martinez said that Ambers "had the gun." Tr. of Proceedings at 94. Although Kaufman may have inadvertently brought up the damaging live-round incident on cross-examination, Mr. Martinez makes no issue of it on appeal. The problem faced by Kaufman was that the evidence strongly favored guilt. To obtain any favorable evidence, he needed to elicit hearsay, even though this effort would likely lead to the introduction of additional unfavorable evidence. We conclude that Kaufman's failure to object when Officer Jensen

-10-

provided damaging hearsay testimony was a necessary consequence of a trial strategy designed to utilize helpful hearsay testimony. *See Snow v. Sirmons*, 474 F.3d 693, 721 (10th Cir. 2007) (observing that when "[t]he failure to object appears to be trial strategy[,] . . . it cannot be a ground[ ] for a claim of ineffective assistance of counsel"). Again, no purpose would have been served by an evidentiary hearing.

## III. CONCLUSION

The judgment of the district court is AFFIRMED.[2]

Entered for the Court

Harris L Hartz
Circuit Judge

---

[2] To the extent that this court's grant of a COA could be read as including the argument that Kaufman was ineffective for failing to assert a selective-prosecution defense, we note that Mr. Martinez's appellate arguments are couched in terms of his failed motion for discovery to support that defense. But this court specifically excluded from the COA any issues concerning discovery. Consequently, Kaufman's handling of the selective-prosecution issue is not before us.