FILED
United States Court of Appeals
Tenth Circuit

February 12, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DEBORA GREEN,

        Petitioner-Appellant,

v.

RICHARD KOERNER; ATTORNEY
GENERAL OF KANSAS,

        Respondents-Appellees.

No. 08-3163

District of Kansas

(D.C. No. 5:07-CV-03262-RDR)

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

Before **TACHA**, **KELLY,** and **McCONNELL**, Circuit Judges.

Debora Green, a Kansas state prisoner, seeks a certificate of appealability

(COA) that would allow her to appeal from the district court's order denying her

habeas corpus petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2253(c)(1)(A).

Because we conclude that Ms. Green has failed to make "a substantial showing of

the denial of a constitutional right," we deny her request for a COA and dismiss

the appeal. 28 U.S.C. § 2253(c)(2).

---

[*]This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel.

**Background**

On October 24, 1995, a fire destroyed a Prairie Village, Kansas home owned by Ms. Green and her estranged husband, killing two of their three children. Ms. Green and one of her daughters escaped the fire; Ms. Green's husband was not at the home at the time. Almost immediately, suspicion fell on Ms. Green. Her statements to the police on the night of the fire were inconsistent with the physical evidence at the scene. She remained casual and nonchalant during interviews with police and did not ask whether her two other children were alive or dead for at least an hour after her interview began. In addition, her recent behavior led police to suspect her involvement in setting the fire. She had threatened herself and others and acted erratically in recent months. Most glaringly, she had attempted to poison her husband with ricin extracted from castor beans—a fact she does not challenge in this proceeding.

Investigators soon uncovered substantial physical evidence supporting the theory that Ms. Green intended to set fire to her home and murder her children. Fire investigators concluded that the fire had been intentionally set, and had been aided by the pouring of accelerants throughout the house. Test results on evidence taken from Ms. Green's hair were inconsistent with her explanation of the fire, but consistent with the police's theory that she had poured accelerants before the fire. Moreover, investigators at the fire scene found a book in Ms. Green's bedroom entitled "Necessary Lies," the plot of which involved the death

-2-

of several children in a house fire which was intentionally set. Subsequent investigation also revealed that in the weeks preceding the fire, Ms. Green had checked out numerous books from the local library which dealt with the subject of intrafamilial homicide.

The arson theory was also consistent with evidence that Ms. Green may have been particularly agitated directly before the fire. Within the hour before the fire spread through the house, Ms. Green and her estranged husband had an argument during which he accused her of poisoning him and threatened to call the authorities unless she altered her bizarre and dangerous behavior.

On April 17, 1996, in Kansas state court, Ms. Green pled no contest to two counts of capital murder, one count of aggravated arson, one count of attempted first degree murder, and one count of attempted capital murder. She was sentenced on the two murder counts to two concurrent life sentences without the possibility of parole for forty years and to concurrent terms of imprisonment on the other counts. In exchange for the no contest pleas, the state agreed not to seek the death penalty and recommended that the court impose concurrent sentences. At the plea, she acknowledged that "the State can produce substantial evidence that [she] set the fire that caused the death of [her] children." App. I 14.

Almost eight years later, Ms. Green moved to set aside her no contest plea, which Kansas courts may do after sentencing only "[t]o correct manifest injustice." Kan. Stat. Ann. § 22-3210(d). She argued that new advances in the

science of fire investigation rendered the factual basis for her plea "unreliable and insufficient." App. I 55. Because she asserted that she could not have been aware of such developments at the time of her plea, she also argued that she did not knowingly and intelligently enter her plea. *See id.* The District Court of Johnson County, Kansas held an evidentiary hearing to allow Ms. Green to present expert testimony in support of her claim. The state also presented expert testimony to defend its conclusion that the fire was the result of arson.

The state district court rejected all of Ms. Green's claims. *Kansas v. Green*, No. 95CR5387, slip. op. (Dist. Ct. of Johnson Cty., Kan. Feb. 11, 2005). While it agreed that the evidence presented by Ms. Green "calls in to question the reliability of some of the signs that investigators used to determine arson, the evidence does not rise to a level that proves their ultimate conclusion was wrong." App. I 62. The court noted that there remained "substantial and compelling evidence to believe [Ms. Green] started [the fire]." *Id.* As a result, it concluded that "[t]he factual basis on which defendant Green based her plea in 1996 was, and remains, sound." *Id.* It also determined that Ms. Green's plea was "intelligently and voluntarily given." *Id.* at 63.

The Kansas Supreme Court affirmed. *State v. Green*, 153 P.3d 1216 (Kan. 2007). It noted that Ms. Green offered evidence that only challenged the arson theory, but did not disprove it. The court noted that the state's expert testimony confirmed that "arson was still very much alive as an explanation for the fire."

App. I 54.  Moreover, it explained that "defendant's focus on advances in fire science ignores the inescapable.  The task force conclusion was *far from the only evidence supporting the aggravated arson and other charges.*"  *Id.* (emphasis added)

Ms. Green next sought a writ of habeas corpus in the United States District Court for the District of Kansas.  *Green v. Koerner*, 2008 WL 2079469 (D. Kan. May 15, 2008).  She again asserted that her original no contest plea "was unknowing and unintelligent" because "significant advances in fire science . . . rendered the original forensic conclusions [from the fire investigation] clearly incorrect."  App. I 26.  She argued that "[b]ecause the underlying factual basis for the no contest plea was clearly incorrect the plea itself was not intelligent or knowing."  The district court denied the writ, noting that the federal Constitution "does not require state courts to ascertain a factual basis prior to accepting a guilty plea" when the defendant does not proclaim innocence at the time of her plea.  *Id.* at *4.  Having found that Ms. Green "did not assert that she was innocent when she entered her pleas of no contest," the district court concluded that Ms. Green had not demonstrated the violation of any federal right.  This appeal followed.

## Discussion

The denial of a motion for relief under 28 U.S.C. § 2254 may be appealed only if the district court or this Court first issues a COA.  28 U.S.C. §

2253(c)(1)(A).  A COA will issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  In order to make such a showing, a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted).

When the petitioner's federal habeas claims are adjudicated on the merits in state court proceedings, the Antiterrorism and Effective Death Penalty Act ("AEDPA") dictates that a court may grant a habeas petition only where the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law" or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  We incorporate this AEDPA deference to state court decisions into our COA analysis, and thus, when evaluating claims addressed by a state court on the merits, we cannot grant a COA unless we find that "reasonable jurists could debate whether the [state court's] decision was not merely wrong but *unreasonable*, either as a determination of fact or as an application of clearly established federal law."  *Dockins v. Hines*, 374 F.3d 935, 940 (10th Cir. 2004).  The district court's legal analysis is reviewed de novo and any factual findings

are reviewed for clear error. *Wilson v. Sirmons*, 536 F.3d 1064, 1073 (10th Cir. 2008).

*Was a factual basis required for Ms. Green's plea?*

Ms. Green primarily argues that the district court erred in concluding that no factual basis was required to support her no contest plea. Largely for the reasons stated in the district court's opinion, we disagree. Ms. Green's contention that the state court lacked a factual basis to support her plea does not, by itself, present a basis to invalidate her plea in a federal habeas corpus action. *See Glasper v. Tulsa Cty. Dist. Court*, 67 F.3d 312 (Table), 1995 WL 578983 at *3. "Only when a defendant proclaims his innocence while pleading guilty have federal courts required a judicial finding of some factual basis for the plea as an essential part of the constitutionally required finding that the plea was voluntary."[1] *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) (citing *North*

---

[1]Ms. Green suggests that the requirement of a factual basis is heightened where an individual enters a plea of no contest, as opposed to guilty. *See* Aplt. Br. 14. In fact, the opposite may be true. While this case does not require us to decide the question, it is not settled whether a state court must ascertain a factual basis before accepting a plea of no contest. As the Supreme Court noted in *Alford*:

> Throughout its history . . . the plea of nolo contendere has been viewed not as an express admission of guilt but as a consent by the defendant that he may be punished as if he were guilty and a prayer for leniency. Fed. Rule Crim. Proc. 11 preserves this distinction in its requirement that a court cannot accept a guilty plea 'unless it is satisfied that there is a factual basis for the plea'; there is no similar requirement for pleas of nolo contendere, since it was thought
>
> (continued...)

*Carolina v. Alford*, 400 U.S. 25, 38 n. 10 (1970)); *accord Perkins v. Sirmons*, 201

Fed. App'x. 648, 651 (10th Cir. 2006).

In this case, the district court determined that Ms. Green "did not make a

claim of innocence at the time of her no contest pleas." *Koerner*, 2008 WL

2079469 at *5. We can set this determination aside only if we find it clearly

erroneous. *See Wilson v. Sirmons*, 536 F.3d 1064, 1073 (10th Cir. 2008). When

pleading no contest, Ms. Green stated the following:

> After counseling with my attorneys I plead no contest to all charges.
> I understand the Court will find me guilty of all counts. I am aware
> that the State can produce substantial evidence that I set the fire that
> caused the death of my children. My attorneys are ready, willing and
> able to present evidence that I was not in control of myself when Tim
> and Kelly died.
>
> However true that may be, defending myself at trial on these charges
> would only compound the suffering of my family and my daughter,
> Kate. I love my family very much. I never meant to harm my
> children but I accept the fact that I will be punished harshly.

*Green*, 2008 WL 2079469 at *5.

After reviewing Ms. Green's statement, we cannot say that the district court

clearly erred by concluding that she did not assert her innocence. While Ms.

Green asserted that her attorneys could "introduce evidence" that she was not in

control of herself at the time of the fire, that does not amount to a firm claim of

---

[1](...continued)
desirable to permit defendants to plead nolo without making any
inquiry into their actual guilt. *North Carolina v. Alford*, 400 U.S. 25,
35 n. 8 (1970).

innocence. Many factually guilty defendants can "introduce evidence" that would make it more difficult for the prosecution to prove its case; a willingness and ability to introduce such evidence is not equivalent to a protestation of innocence. Likewise, Ms. Green's statement that she "never meant to harm [her] children" could be understood as an expression of regret, rather than a claim of innocence. Because the district court did not clearly err by concluding that Ms. Green never asserted her innocence at the time of her plea, there was no federal constitutional requirement that the state court identify a factual basis for Ms. Green's plea.

Even if we believed that reasonable jurists could debate whether or not Ms. Green asserted her innocence at the time of her initial plea, her claim still would not warrant relief. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). Of course, a plea is constitutionally valid only when it represents a "voluntary and intelligent" choice. *Alford*, 400 U.S. at 31. As a result, courts have concluded that a state court commits constitutional error when accepting a guilty plea accompanied by a protestation of innocence unless the plea is shown to have a factual basis. *See, e.g., United States v. Martinez*, 30 Fed. App'x. 900, 905 (10th Cir. 2002); *Willett v. Georgia*, 608 F.2d 538, 540 (5th Cir. 1979); *United States ex rel. Dunn v. Casscles*, 494 F.2d 397, 399–400 (2d Cir. 1974). A trial court has

wide discretion in determining whether such a factual basis exists. *See United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990).

Ms. Green contends that the voluntariness of her initial plea has been put into question by advances in fire investigation science, which, at most, raise doubts about one fact amongst many constituting the substantial factual basis for her plea. On the basis of this alleged new evidence, admittedly unknown to any of the parties at the time of the plea, she claims that her plea could not have been intelligent at the time it was made. This proposition is untenable. It would expose the voluntariness of every guilty plea to attack, even though competent when made, whenever the barest scintilla of new evidence casts doubt on one of the many facts supporting the guilt of the convicted party. The Supreme Court has made clear that the Constitution requires no such thing:

> Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted. Considerations like these frequently present imponderable questions for which there are no certain answers; judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. *A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case . . . .*

*Brady v. United States*, 397 U.S. 742, 756–57 (1970) (emphasis added). The fact that Ms. Green did not anticipate developments in fire investigation science "does not impugn the truth or reliability of [her] plea." *Id.* at 757.

Moreover, as the district court noted, the factual basis supporting Ms. Green's guilt hardly rested on the conclusions of the fire investigators alone. The state was prepared to introduce substantial evidence—none of which Ms. Green contests here—which tended to suggest Ms. Green set the fire: the inconsistencies in her testimony, her recent attempt to poison her husband, the fact that she had checked out books about intrafamilial homicide and children burning to death in an intentionally set house fire, her nonchalant behavior in her police interview, and her failure to ask the police during that interview whether her children were alive or dead for at least an hour. Thus, even if we fully credited the evidence Ms. Green introduced—evidence which, at most, suggested that the cause of the fire was undeterminable, *Green*, 2008 WL 2079469 at *2—it would not disturb the fact that a substantial and powerful factual basis existed to support her guilt.

In a final attempt to cast doubt on the voluntariness of her plea, Ms. Green alleges that her plea was coerced by "misrepresentation or other impermissible conduct by state agents." Aplt. Br. 22. This argument borders on the frivolous. It is hardly misconduct for the state to develop a case based on the best forensic techniques available to it at the time, even if later scientific developments put those techniques into question. Ms. Green's own brief acknowledges that at the

-11-

time of her plea "almost everyone was unaware of the advances in fire science and investigation" that now form the basis of her allegedly new evidence. Aplt. Br. 21. Moreover, her own expert's testimony challenged the conclusions of the original fire investigators based only on "the development of fire investigation science *since 1995*" and about which "*investigators would not have known in 1995*." Aplt. Br. 10 (emphasis added). Thus, even Ms. Green's expert does not suggest that the state's investigators acted improperly at the time they developed their conclusions.

Finally, to the extent that Ms. Green contends that the testimony of the state's expert, Dr. DeHaan, during the evidentiary hearing represented a "deliberate deception of the court" and a "presentation of false arson science," Aplt. Br. 23, she gives us little basis to disturb the Kansas Supreme Court's conclusion that Dr. DeHaan and Ms. Green's expert simply reached different conclusions from the same data.

Because no reasonable jurist could conclude that the Kansas Supreme Court unreasonably applied Supreme Court precedent by concluding that Ms. Green had failed to demonstrate her plea was involuntary, it would be inappropriate to grant a COA on this point of law.

*Ineffective Assistance of Counsel*

Ms. Green also argues that the state court applied the wrong legal standard when evaluating her claim that her plea was the result of ineffective assistance of

counsel. A defendant who pleads guilty upon the advice of counsel may attack the voluntary and intelligent character of the guilty plea only by showing both that the advice he received from counsel was outside "the range of competence demanded of attorneys in criminal cases" and that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 56, 59 (1985). Ms. Green argues that the Kansas Supreme Court erred by requiring her to produce evidence that would exonerate her before permitting the withdrawal of her guilty plea. *See* Aplt. Br. 26.

We note first that Ms. Green did not even raise an ineffective assistance allegation in her petition for post-conviction relief from the Kansas Supreme Court or, as far as we can tell, before the federal district court.[2] But even if we considered Ms. Green's ineffective assistance claim to be properly before us, it would fail on the merits. Ms. Green's sole claim of attorney deficiency is, in effect, that her attorney failed to foresee future developments in fire investigation

---

[2]In actuality, the state ruling Ms. Green complains of did not respond to an ineffective assistance claim, but rather to her argument that the Kansas courts should set aside her conviction and permit the withdrawal of her plea "to correct manifest injustice," as a matter of Kansas law. *See Green*, 153 P.3d at 1225–27 (determining whether Ms. Green's alleged new evidence justified the setting aside of her conviction and plea under section 22-3210(d) of the Kansas Statutes Annotated). To the extent that Ms. Green is challenging the Kansas Supreme Court's application of section 22-3210(d), such an argument is not cognizable in a federal habeas action. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991).

science that occurred after the date she entered her plea. *See* Aplt. Br. 21 (arguing that her counsel "could not be truly competent . . . because not even the experts were competent" at the time of her plea, in light of alleged developments in fire investigation science). Ms. Green's protestations to the contrary notwithstanding, an attorney's inability to foretell the future does not place him outside "the range of competence demanded of attorneys in criminal cases." *Hill*, 474 U.S. at 56. Ms. Green cannot, therefore, demonstrate that her plea was the product of ineffective assistance of counsel.

## Conclusion

Accordingly, we **DENY** Ms. Green's request for a COA and **DISMISS** this appeal.

Entered for the Court,


Michael W. McConnell
Circuit Judge